UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------------------x

AMERICAN GENERAL LIFE INSURANCE COMPANY,

Plaintiff ,

-against-

TELLER FAMILY IRREVOCABLE TRUST VI,
by and through its trustee, GERSON SONTAG a/k/a
GERSHON SONTAG, and TELLER FAMILY
IRREVOCABLE TRUST VII, by and through its trustee,
BEZALEL EPSTEIN a/k/a BTALEL BERNSTEIN,

Defendants.

-----------------------------------------------------------------------x

Case No.
2:10-CV-05604-SDW-MCA

***ANSWER
AND COUNTERCLAIM***

*JURY TRIAL DEMANDED*

Defendants, by their attorney, Elizabeth Eilender, Esq., as and for their answer and

counterclaim, allege as follows:

1.      With respect to the allegations in paragraph 1, admit that this purports to be a

declaratory judgment and fraud action, although it is not clear who plaintiff claims perpetrated

the fraud, which fraud, if any, appears to be on the part of the plaintiff and its agents, as will be

set forth in the counterclaim.

2.      Deny knowledge and information sufficient to form a belief with respect to the

allegations contained in paragraph 2 of the complaint.

3.      Deny the allegations contained in paragraph 3 of the complaint. The allegation

that Trust VI is a New Jersey trust is a pure fabrication by counsel, in violation of Rule 11, and

supported by nothing since the trust agreement specifically makes it clear that it is between

Bluma Teller, who resides at 191 Division Avenue, Brooklyn, New York, and the trustees, her

son Yehoshua Teller, who resides at 6 Siget Court, Monroe, New York, and Gerson Sontag,

who resides at 2400 Avenue L, Brooklyn, New York. The trust further provides in Article 21, ¶b, that the trust is governed by New York law without giving effect to any conflicts of law provisions. The trust agreement was signed by all parties in the State of New York, and the claim that the trust is organized under the laws of the State of New Jersey is contrived by counsel and the plaintiff to attempt to commence this action in New Jersey and apply New Jersey law, which will multiply proceedings and is in direct violation of 28 U.S.C. 1927.

4.    Deny the allegations contained in paragraph 3 of the complaint. The allegation that Trust VII is a New Jersey trust is a pure fabrication by counsel, in violation of Rule 11, and supported by nothing since the trust agreement specifically makes it clear that it is between Bluma Teller, who resides at 191 Division Avenue, Brooklyn, New York, and the trustees, her son Yehoshua Teller, who resides at 6 Siget Court, Monroe, New York, and Bezalel Bernstein, who resides at 1516 46th Street, Brooklyn, New York. The trust specifically provides in Article 16, ¶b, that the situs of the trust is the State of New York and that the trust is governed by New York law. The claim that the trust is organized under the laws of the State of New Jersey is contrived by counsel and the plaintiff to attempt to commence this action in New Jersey and apply New Jersey law, which will multiply proceedings and is in direct violation of 28 U.S.C. 1927.

5.    Deny the allegations contained in paragraph 5 of the complaint; a declaratory judgment action does not provide jurisdiction.

6.    Deny the allegations contained in paragraph 6 of the complaint as being totally fabricated and false. Defendants Sontag and Bernstein have nothing to do with the State of New Jersey, did not purchase life insurance policies in the State of New Jersey; they were

solicited to pay the premiums on life insurance policies in New York and the policies were delivered to them in the State of New York and this action is not governed by the laws of the State of New Jersey. These claims are contrived by counsel and the plaintiff to attempt to commence this action in New Jersey and apply New Jersey law, which will multiply proceedings and is in direct violation of 28 U.S.C. 1927.

7.      Deny the allegations contained in paragraph 7 of the complaint; venue is not proper in the District of New Jersey; the insurance policies are not governed by New Jersey law; none of the events giving rise to this action occurred in the State of New Jersey; none of the parties reside in New Jersey; and these claims are contrived by counsel and the plaintiff to attempt to commence this action in New Jersey and apply New Jersey law, which will multiply proceedings and is in direct violation of 28 U.S.C. 1927.

8.      Deny the allegations contained in paragraph 8 of the complaint, except that this purports to be an action for a declaratory judgment.

9.      Deny the allegations contained in paragraph 9 of the complaint. STOLI policies are entirely legal in the State of New York; they are probably legal in the State of New Jersey, although the State of New Jersey and New Jersey law has nothing to do with this action. Upon information and belief, AIG, the company from whom the defendants thought they were purchasing the policies, which American General is apparently a subsidiary of, was and is involved in purchasing STOLI policies as an investment tool.

10.     Deny the allegations contained in paragraph 10 of the complaint. Most of the allegations have nothing to do with this case, are scandalous and prejudicial, and should be stricken.

11.      Admit the allegation in paragraph 11 of the complaint that STOLI is a means of buying or paying for insurance, encouraged by AIG and American General; it is denied that the New Jersey Department of Banking, as set forth in footnote 1 of the complaint, has in any way outlawed or not permitted STOLI policies. The reference in footnote 1 of the complaint has nothing to do with STOLI (Exhibit A) and is intended to mislead the Court.

12.      Deny knowledge and information sufficient to form a belief with respect to the allegations contained in paragraph 12 of the complaint.

13.      Deny the allegations contained in paragraph 13 of the complaint. American General's agent, as part of American General's plan to increase its revenues, solicited Sontag in New York to become an investor in an insurance policy on the life of Bluma Teller.

14.      Deny the allegations contained in paragraph 14 of the complaint. The trustee and Sontag provided no information whatsoever with respect to Bluma Teller because they had no information. All the information on the application was provided by American General's agent. It is also denied that American General would rely on the information, insofar as the net worth and annual income, since American General and its agents were fully aware that Bluma Teller lived in public housing and they were not interested and it was totally immaterial what her income or net worth were. The only thing American General was interested in was selling the policies and collecting substantial premiums and commissions for its agents.

15.      Deny the allegations contained in paragraph 15 of the complaint. Sontag provided no information whatsoever because he had no information, and was simply solicited by American General's agent to invest in the STOLI policy. Sontag had no information at all

as to Teller's net worth or annual income. Sontag was never contacted by New York Inspection Services Inc. and made no representation to New York Inspection Services Inc.

16.     Deny the allegations contained in paragraph 16 of the complaint. Sontag made no representations as to the purpose of purchasing the insurance policy which American General's agent had solicited him to invest in and pay premiums as a STOLI policy. Any representations that the policy was for estate planning and asset protection were made solely by American General's agent in order to generate premiums for American General and commissions for the agent. In any event, the purpose of the policy is not material; the purpose was known to American General and its agent, as its representative, as being a STOLI policy, and the policy is now incontestible.

17.     Admit the allegations contained in paragraph 17 of the complaint and refer the Court to a full and complete reading of the policy in context.

18.     Deny the allegations contained in paragraph 18 of the complaint.

19.     Deny the allegations contained in paragraph 19 of the complaint. American General's agent, as part of American General's plan to increase its revenues, solicited Bernstein in Brooklyn, New York to become an investor in an insurance policy on the life of Bluma Teller by paying the premiums through a trust.

20.     Deny the allegations contained in paragraph 20 of the complaint. The trustee and Bernstein provided no information whatsoever with respect to Bluma Teller because they had no information. All the information on the application was provided by American General's agent. It is also denied that American General would rely on the information, insofar as the net worth and annual income, since American General and its agents were fully aware that Bluma

Teller lived in public housing and they were not interested and it was totally immaterial what her income or net worth were. The only thing American General was interested in was selling the policies and collecting substantial premiums.

21.     Deny the allegations contained in paragraph 21 of the complaint. Bernstein provided no information whatsoever because he had no information, and was simply solicited by American General's agent to invest in the STOLI policy on Teller. Bernstein had no information at all as to Teller's net worth or annual income. Bernstein was never contacted by New York Inspection Services Inc. and made no representation to New York Inspection Services Inc.

22.     Deny the allegations contained in paragraph 22 of the complaint. Bernstein made no representations as to the purpose of purchasing the insurance policy which American General's agent had solicited him to invest in and pay premiums as a STOLI policy. Any representations that the policy was for estate planning and asset protection were made solely by American General's agent in order to generate premiums for American General and commissions for the agent. In any event, the purpose of the policy is not material; the purpose was known to American General and its representative agent as being a STOLI policy.

23.     Admit the allegations contained in paragraph 23 of the complaint and refer the Court to a full and complete reading of the policy in context.

24.     Deny the allegations contained in paragraph 24 of the complaint.

25.     Deny the allegations contained in paragraph 25 of the complaint in that Sontag and Bernstein did not have the slightest idea of Teller's net worth or annual income; that if American General had followed internal underwriting rules, it could have clearly known that

one cannot live in public housing and have an annual income of $750,000, except that American General did not have any interest in what Teller's net worth or annual income were, but was only interested in having someone pay the premiums for which its agents solicited Sontag and Bernstein and did so in the State of New York with American General's knowledge and at its direction, knowing American General was not licensed to sell insurance in the State of New York.

26.     Admit the allegations contained in paragraph 26 of the complaint that the trusts were not established by Teller to serve estate planning needs; upon information and belief, the trusts were established by American General's agents through lawyers known to the agents, which lawyers were previously used by American General's representatives to create other similar trusts, in order to have investors pay the premiums; the allegations are otherwise denied.

27.     Deny the allegations contained in paragraph 27 of the complaint. Sontag and Bernstein did not have the slightest idea of what Teller's net worth or annual income were and made no representations. All representations as to net worth and annual income were entered by  American General's agent with American General's knowledge in order to generate substantial premiums for American General and commissions for its agents and management at American General who participated in the commissions and bonuses.

28.     Deny the allegations contained in paragraph 28 of the complaint. Sontag and Bernstein invested in the policies through trusts  which were created by American General through its agents, through lawyers the agents had previously used with the possibility of selling them in a secondary market, or to continue to pay the premiums under the terms of the policy.

29.     Admit the allegations contained in paragraph 29 of the complaint to the extent that the investors were going to fund the premiums and that is the purpose they were solicited for by American General's agent. It is denied that third party investors had no insurable interest by investing through the trust created by American General's agents.

30.     Defendants repeat and reiterate the responses contained in paragraphs 1 through 29 herein.

31.     Admit the allegations contained in paragraph 31 of the complaint, that American General is now seeking to declare the policies void because the policies have not lapsed and American General's fraud has been uncovered and in response to a letter from Sontag's counsel in September 2010, American General ran to the courthouse to commence this action and to posture as an aggrieved party.

32.     Deny the allegations contained in paragraph 32 of the complaint.

33.     Deny the allegations contained in paragraph 33 of the complaint. Trust VI is not "ill gotten gains." All Trust VI has done is pay premiums for many years, as it was induced to do by American General's agent and when the policy did not lapse due to the high premiums, as American General intended, and after contacted by Sontag's counsel, American General ran to the  courthouse to posture as an injured innocent.

34.      Deny the allegations contained in paragraph 34 of the complaint. Although American General purports to tender the premiums to the Court, to the knowledge of the defendants no such tender has been made and no money has been deposited.

8

35.     Admit the allegations contained in paragraph 35 of the complaint that American General is seeking attorneys' fees and costs; however a federal declaratory judgment action does not provide for attorneys' fees and costs.

36.     Defendants repeat and reiterate the responses contained in paragraphs 1 through 35 herein.

37.     Admit the allegations contained in paragraph 37 of the complaint, that American General is now seeking to declare the policies void because the policies have not lapsed and American General's fraud has been uncovered and in response to a letter from Sontag's counsel in September 2010, American General ran to the courthouse to commence this action and to posture as an aggrieved party.

38.     Deny the allegations contained in paragraph 38 of the complaint.

39.     Deny the allegations contained in paragraph 39 of the complaint. Trust VII is not "ill gotten gains." All Trust VII has done is pay premiums for many years, as it was induced to do by American General's agent and when the policy did not lapse due to the high premiums, as American General intended, and after being contacted by Sontag's counsel about the Teller policy, American General ran to the  courthouse to posture as an injured innocent.

40.      Deny the allegations contained in paragraph 40 of the complaint. Although American General purports to tender the premiums to the Court, to the knowledge of the defendants no such tender has been made and no money has been deposited.

41.     Admit the allegations contained in paragraph 41 of the complaint that American General is seeking attorneys' fees and costs; however a federal declaratory judgment action does not provide for attorneys' fees and costs.

42.      Defendants repeat and reiterate the responses contained in paragraphs 1 through 41 herein.

43.      Admit the allegations contained in paragraph 43 of the complaint, that American General is now seeking to declare an incontestible policy null and void; there is no law that prohibits investors from obtaining an interest in a life policy with the insured's consent. The New York Court of Appeals in *Kramer v. Phoenix Life Insurance Co.,* ___ N.Y.2d ___, 2010 WL 4628103 (N.Y.) 2010 N.Y. Slip Op. 08376 (November 17, 2010), has made this crystal clear. New Jersey similarly has no such prohibition although New Jersey has nothing to do with this case where the insured and the investors are all in New York, the trustee is in New York, the trust is a New York trust, the policy was delivered to Sontag in New York by American General's agent, and American General is now seeking to fabricate a scenario that New Jersey law applies because it was not licensed to sell insurance in the State of New York but did so, and the defendant had filed a complaint with the New York State Insurance Department.

44.      Deny the allegations contained in paragraph 44 of the complaint.

45.      Deny the allegations contained in paragraph 45 of the complaint.

46.      Deny the allegations contained in paragraph 46 of the complaint; although American General purports to tender, nothing has been tendered to the Court.

47.      Admit the allegations contained in paragraph 47 of the complaint that American General is seeking attorneys' fees and costs; however a federal declaratory judgment action does not provide for attorneys' fees and costs.

48.      Defendants repeat and reiterate the responses contained in paragraphs 1 through 47 herein.

49.     Admit the allegations contained in paragraph 49 of the complaint, that American General is now seeking to declare an incontestible insurance policy null and void; there is no law that prohibits investors from obtaining an interest in a life policy with the insured's consent. The New York Court of Appeals in *Kramer v. Phoenix Life Insurance Co.*, __ N.Y.2d __, 2010 WL 4628103 (N.Y.) 2010 N.Y. Slip Op. 08376 (November 17, 2010), has made this crystal clear. New Jersey similarly has no such prohibition although New Jersey has nothing to do with this case where the insured and the investors are all in New York, the trustee is in New York, the trust is a New York trust, the policy was delivered to Bernstein in New York by American General's agent, and American General is now seeking to fabricate a scenario that New Jersey law applies because it was not licensed to sell insurance in the State of New York but did so, and the defendant Sontag had filed a complaint with the New York State Insurance Department.

50.     Deny the allegations contained in paragraph 50 of the complaint.

51.     Deny the allegations contained in paragraph 51 of the complaint.

52.     Deny the allegations contained in paragraph 52 of the complaint; although American General purports to tender, nothing has been tendered to the court.

53.     Admit the allegations contained in paragraph 41 of the complaint. American General is seeking attorneys' fees and costs; however a federal declaratory judgment action does not provide for attorneys' fees and costs.

54.     Defendants repeat and reiterate the responses contained in paragraphs 1 through 43 herein.

55.     Deny the allegations contained in paragraph 55 of the complaint. Defendants made no fraudulent statement to anyone. They did not know Teller's net worth or annual income; all representations were made by American General's agent in order to generate premium revenue for American General and commissions for the agents pursuant to American General's policy of soliciting New York residents to buy insurance by American General and to have investors pay premiums despite American General not being licensed to sell insurance in the State of New York, which violates the laws of the State of New York.

56.     Deny the allegations contained in paragraph 56 of the complaint. American General relied on nothing since its agent was fully aware of exactly what the situation was and upon information and belief conveyed that information to American General. American General and its agents were interested in generating premiums, and the agent commissions for themselves and other American General personnel, and American General issued these policies with full knowledge of all the facts.

57.     Deny the allegations contained in paragraph 57 of the complaint.

58.     Deny the allegations contained in paragraph 58 of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

59.     American General has failed to add as a party to this case Bluma Teller who is an indispensable and/or necessary party.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

60.     American General suffered no damages and is entitled to receive nothing.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

61.     The policies on the life of Bluma Teller, a New York resident, were issued to trustees in New York, which policies were delivered in New York; this matter has nothing to do with New Jersey, and investing in an insurance policy with the knowledge and at the request of the insured is perfectly legal in New York, as was recently made clear in *Kramer v. Phoenix Life Insurance Co.,* ___ N.Y.2d ___, 2010 WL 4628103 (N.Y.) 2010 N.Y. Slip Op. 08376 (November 17, 2010).

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

62.     Plaintiff is estopped from commencing this action because it continued to accept premiums long after it claimed there was allegedly a fraud.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

63.     Plaintiff's claim is barred by laches.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

64.     American General cannot profit by its own wrongdoing and that of its agents whom it directed to write policies in the State of New York knowing it was not licensed to do so, and without the defendants' knowledge to fabricate a New Jersey address as a mail drop.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

65.     The complaint fails to state fraud with particularity, and fails to set forth who made the fraudulent statements, to whom they were made, when they were made, and the basis for the claim that they were made by Sontag or Bernstein and not by American General's agents.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

66.     The complaint fails to set forth a cause of action pursuant to the standards required by the Federal Rules as made clear by the United States Supreme Court in *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

67.     Any alleged misrepresentations were not material and were not relied upon by the plaintiff.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

68.     The two-year contestability period has long run and expired and these policies are incontestible, even if there was any alleged fraud or misrepresentation.

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

69.     Pursuant to the terms of the contract of insurance created by American General, these policies are incontestible after two years pursuant to their terms except for reasons not applicable to this matter.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

70.     If there was fraud by anyone, it was not by the defendants but by the plaintiff insurance carrier and its agents.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

71.     Venue is improperly placed in the State of New Jersey since New Jersey has nothing to do with this case; there are no witnesses in New Jersey, no documents in New Jersey, no citizens of New Jersey. All that exists in New Jersey is a possibly temporary

fraudulent mail-drop created by American General's agent which was not known to the defendants.

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

72.     There is no personal jurisdiction in New Jersey over the defendant Sontag.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

73.     There is no personal jurisdiction in New Jersey over the defendant Trust VI.

### AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE

74.     There is no personal jurisdiction in New Jersey over the defendant Bernstein.

### AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE

75.     There is no personal jurisdiction in New Jersey over the defendant Trust VII.

### AS AND FOR A EIGHTEENTH AFFIRMATIVE DEFENSE

76.     Upon information and belief, plaintiff has failed to tender the premiums paid with the court registry.

### AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE

77.     When a party, particularly a sophisticated party such as an insurance carrier, has an available means of discovery by the exercise of ordinary investigation a true nature of a transaction, that party must make use of that reasonable diligence, and cannot later claim fraud for its own failure to do so.

### AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE

78.     If the plaintiff is permitted to keep the defendants' premiums, it will be unjustly enriched.

### *AS AND FOR A TWENTY-FIRST AFFIRMATIVE DEFENSE*

79.     New Jersey law dealing with fraud and insurance companies does not apply to these policies which were issued in New York, delivered in New York to a New York insured and to trustees who are citizens of New York and have nothing to do with the State of New Jersey.

### *AS AND FOR COUNTERCLAIMS*
### *ON BEHALF OF DEFENDANTS*

### *THE UNDERLYING FACTS*

80.     At all times hereinafter mentioned, AIG is a major insurance company with numerous divisions.

81.     Among other things, AIG is involved in the business of purchasing life settlement policies or incontestible life insurance policies, including STOLI policies; see, for example, Exhibit B.

82.     At all times hereinafter mentioned, American General is a division of AIG.

83.     In or about 2005, Sontag was approached by David Weber and Yoel Epstein, agents of American General, and advised that they had obtained an insurance policy on the life of Bluma Teller in the amount of two million dollars, for which they were seeking an investor to pay the substantial premium of over one hundred thousand dollars a year. Apparently Teller was somehow related to American General's agents, Yoel Epstein; the exact relationship is currently unknown.

84.     Weber and Epstein advised that the manner in which this was done was that they would create a trust through lawyers they had previously used in other such matters; that the trust Sontag would be investing in would be known as the Teller Family Irrevocable Trust VI –

leading Sontag to believe there were five prior such trusts – that Sontag would become a trustee of this irrevocable trust, and that he would provide a portion of the profits, if the policy was sold, or a portion of the proceeds of the policy if the policy were paid upon Teller's death, to a charity or Teller's estate.

85.     Sontag confirmed with his own attorney that this type of stranger owned life insurance policy was apparently common and legal in the State of New York, and he therefore agreed to invest in the AIG policy.

86.     Weber and Epstein provided Sontag with a form to sign, which Sontag signed in Brooklyn, New York.

87.     Sontag had no knowledge of Teller's assets or income.

88.     Teller resides in Brooklyn, New York; her son, Yehoshua Teller, the original trustee, resides in Monroe, New York, as apparently did Weber and Epstein.

89.     Thereafter after numerous requests, Epstein and Weber provided Sontag with a trust which they had a lawyer create and had been executed by Bluma Teller and Yehoshua Teller, and was executed by Sontag (Exhibit C).

90.     The trust specifically sets forth that it is a New York trust governed by the laws of the State of New York.

91.     Sontag never went to the State of New Jersey in connection with this trust or the Teller life insurance policy.

92.     Some time thereafter, Weber delivered to Sontag at his home in Brooklyn, New York  a copy of the life insurance policy issued by American General, an AIG subsidiary.

93.     The policy by its very terms makes it clear that after two years the policy is incontestible even if Teller had made any misrepresentations of fact.

94.     Weber and Epstein had advised Sontag that after two years the policy would be incontestible and once it was incontestible, the policy would be able to be sold in an after market for a profit above the premiums which Sontag had paid for the first two years.

95.     For more than five years, Sontag has continued to pay the premiums on the policy.

96.     Due to various articles in the media that some insurance companies were trying to avoid policies which had not lapsed or upon the death of the insured, Sontag's counsel wrote a letter to American General on September 10, 2010 requesting that American General confirm that this policy would be paid pursuant to its terms and that American General knew of no defense to the policy.

97.     In response, Sontag's counsel received a letter from American General's counsel which was less than helpful (Exhibit D).

98.     American General then ran to the courthouse to commence this action to posture as an injured innocent.

99.     In fact, an investigation has now revealed that American General is not licensed to sell insurance in the State of New York and is violating the insurance laws of the State of New York by selling insurance in the State of New York, and Sontag has filed a complaint with the New York State Insurance Department which is currently being investigated.

100.     In connection with the New York State Insurance Department investigation, American General's counsel wrote a letter dated December 13, 2010 (Exhibit E), admitting that

American General is not licensed to sell insurance in New York, but claiming that the trust, Trust VI (Exhibit C), was a New Jersey trust.

101.   This is totally false as can be seen by the very terms of the policy.

102.   It appears that some insurance companies which were unscrupulous, including American General, in the period of 2004, 2005 and 2006, were seeking to generate large premium payments and commission and to increase the amount of sales by targeting policies to be issued to elderly people with high premiums which would be funded by investors, full well knowing the elderly people could not afford the premiums on the policies. These policies would also generate large commissions for the insurance companies' agents who were selling these products.

103.   American General, knowing it was not licensed to sell insurance in New York would nevertheless target New York markets, including the Orthodox Jewish community in Brooklyn, New York to seek out elderly persons who would be insured for large amounts with the premiums paid by investors.

104.   American General's strategy was that due to the high premiums which would have to be paid on these multi-million dollar policies, a good portion of the policies would lapse, as, in fact, many did. With respect to those that did not lapse, American General would then fabricate a claim that it had allegedly been defrauded or the policy was a policy under New Jersey law, and American General would bring actions in the New Jersey courts to try to void those policies by alleging fraud, claiming it did not know the policies were being paid by investors or there was some other alleged misrepresentation.

105.   American General full well knew that under New York law once a policy is two years old it was incontestible for any reason, including alleged fraud.

106.   American General and its attorneys then contrived to claim the policies were New Jersey policies so they could possibly be attacked under New Jersey law.

107.   American General's agents in this case, for both Trust VI and Trust VII, fabricated an address at 94 Fulton Street, Paterson, New Jersey, as the trusts' alleged address, full well knowing this address had nothing at all to do with the trust or the trustees and this alleged address had been entered onto the form by the agents after the applications had been signed by Sontag and/or Bernstein.

108.   The fact that some fabricated address in Paterson, New Jersey was used for both trusts, when Sontag and Bernstein did not even know each other at the time, makes it clear that this address was something that was fabricated by American General and its agents.

### AS AND FOR A FIRST COUNTERCLAIM
### ON BEHALF OF DEFENDANT
### TELLER FAMILY IRREVOCABLE TRUST VI,
### by and through its trustee, GERSON SONTAG a/k/a GERSHON SONTAG

109.   The defendant trust/Sontag is entitled to a declaratory judgment pursuant to 28 U.S.C. 2201 and 2202 that Trust VI and its insurance policy are valid and incontestible, and that provided the premiums are paid, must be honored by American General.

### AS AND FOR A SECOND COUNTERCLAIM
### ON BEHALF OF DEFENDANT
### TELLER FAMILY IRREVOCABLE TRUST VI,
### by and through its trustee, GERSON SONTAG a/k/a GERSHON SONTAG

110.   Defendant repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

111.   American General was fully aware that Bluma Teller lived in public housing and did not have twenty million dollars in assets or, at the age of eighty, income of $750,000 a year. At the very least, a minimal investigation or due diligence would have revealed this.

112.   American General's underwriting policy required it to perform an investigation to determine income and assets if and when it was relevant.

113.   American General had no interest in Bluma Teller's income or assets but was simply seeking to generate premiums and commissions on policies for elderly people which it hoped would lapse, and when the policy did not lapse American General would find a reason to try to void the policy under New Jersey law knowing that after two years it could not be voided under New York law.

114.   Defendant did not intend to invest in a policy which was not valid, sold by a company not licensed to do business in New York, or had been fraudulently obtained.

115.   Defendant would have invested its hard-earned money, over $500,000 in premiums to date, in a valid policy on a New York resident where investing in life insurance on other persons with their consent is perfectly valid.

116.   But for the plaintiff's fraud in failing to advise Sontag that the plaintiff and its agents had fraudulently put down a fabricated New Jersey address as the alleged address of the trust, and had misrepresented Teller's income and assets which they now claim is material, and that American General never intended to honor the policy if it did not lapse, Sontag never would have agreed to the request of Weber and Epstein, as American General's agents, to pay the premiums on the Teller policy as an investor.

117.    By reason of the plaintiff's fraud defendant has been damaged in that he has paid over $500,000 in premiums to date, which it is continuing to pay, and has been deprived of investing that money in a valid policy in New York where American General is not licensed to sell insurance.

118.    Had Sontag known that American General was not licensed to sell insurance in New York, he never would have purchased the policy to begin with.

119.    By reason of the foregoing, defendant is entitled to recover all of its damages from the plaintiff, including consequential damages and punitive damages.

### AS AND FOR A THIRD COUNTERCLAIM
### ON BEHALF OF DEFENDANT
### TELLER FAMILY IRREVOCABLE TRUST VII,
#### by and through its trustee,
### BEZALEL EPSTEIN a/k/a BTALEL BERNSTEIN

120.    The defendant trust/Bernstein is entitled to a declaratory judgment pursuant to 28 U.S.C. 2201 and 2202 that Trust VI and its insurance policy are valid and incontestible, and that provided the premiums are paid, must be honored by American General.

### AS AND FOR A FOURTH COUNTERCLAIM
### ON BEHALF OF DEFENDANT
### TELLER FAMILY IRREVOCABLE TRUST VII
#### by and through its trustee,
### BEZALEL EPSTEIN a/k/a BTALEL BERNSTEIN

121.    Defendant repeats, reiterates and realleges each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

122.    American General was fully aware that Bluma Teller lived in public housing and did not have twenty million dollars in assets or, at the age of eighty, income of $750,000 a year. At the very least, a minimal investigation or due diligence would have revealed this.

123.    American General's underwriting policy required it to perform an  investigation to determine income and assets if and when it was relevant.

124.    American General had no interest in Bluma Teller's income or assets but was simply seeking to generate premiums and commissions on policies for elderly people which it hoped would lapse, and when the policy did not lapse American General would try to create a reason to try to void the policy under New Jersey law knowing that after two years it could not be voided under New York law.

125.    Defendant did not intend to invest in a policy which was not valid, sold by a business not licensed to do business in New York, or had been fraudulently obtained.

126.    Defendant would have invested its hard-earned money, over $250,000 in premiums to date, in a valid policy on a New York resident where investing in life insurance on other persons with their consent is perfectly valid.

127.    But for the plaintiff's fraud in failing to advise Bernstein that the plaintiff and its agents had fraudulently put down a fabricated New Jersey address as the alleged address of the trust, and had misrepresented Teller's income and assets which they now claim is material, and that American General never intended to honor the policy if it did not lapse, Bernstein never would have agreed to the request of Weber and Epstein, as American General's agents, to pay the premiums on the Teller policy.

128.    By reason of the plaintiff's fraud defendant has been damaged in that he has paid over $250,000 in premiums to date, which it is continuing to pay, and has been deprived of investing that money in a valid policy in New York where American General is not licensed to sell insurance.

129.   Had Bernstein known that American General was not licensed to sell insurance in New York, he never would have purchased the policy to begin with.

130.   By reason of the foregoing, defendant is entitled to recover all damages from the plaintiff, including consequential and punitive damages.

### AS AND FOR A FIFTH COUNTERCLAIM
### ON BEHALF OF ALL DEFENDANTS

131.   Defendants hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

132.   By acting as aforesaid, selling insurance in New York when not authorized to do so, in misrepresenting that it was authorized to sell insurance in New York, selling insurance with high premiums when it never intended to honor those policies even after they were incontestible but instead waiting for them to lapse and doing so on a regular basis, American General was committing consumer fraud upon the defendants and the public.

133.   As a result of being victims of the plaintiff's consumer fraud, defendants have been damaged as aforesaid.

134.   By reason of the foregoing, defendants are entitled to recover all of their damages, together with costs and attorneys' fees pursuant to §349 of the General Business Law.

135.   If the plaintiff's argument is correct, which it is not, that New Jersey applies, plaintiff by selling insurance policies in New York and making misrepresentations as set forth above have also committed fraud under the New Jersey consumer fraud statute, § 56.8-2.

136.   By reason of the plaintiff's fraud, defendants are entitled to punitive damages because plaintiff was illegally selling insurance and deliberately setting out to defraud the defendants and the public.

## *AS AND FOR A SIXTH COUNTERCLAIM*
## *ON BEHALF OF ALL DEFENDANTS*

137.    Defendants hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

138.    If plaintiff is entitled to void the policies and not return the premiums paid by the defendants plus interest, plaintiff will have been unjustly enriched.

139.    By reason of the foregoing, since plaintiff is seeking equitable relief from this Court and has unclean hands, plaintiff should not be permitted to be unjustly enriched.

140.    By reason of the foregoing, at the very least plaintiff should be directed to return the amount of premiums plus interest to the defendants.

## *AS AND FOR A SEVENTH COUNTERCLAIM*
## *ON BEHALF OF ALL DEFENDANTS*

141.    Defendants hereby repeat, reiterate and reallege each of the foregoing allegations with the same force and effect as if more fully set forth at length herein.

142.    Plaintiff entered into an insurance contract with each of the defendants, Trust VI and Trust VII.

143.    The insurance contract provides as a matter of law in New York that after two years, the policy is incontestible.

144.    Pursuant to the terms of the contract, even if New Jersey law should apply, which it does not, the terms of the contract provide that the policy is incontestible.

145.    By seeking to avoid its obligations under the contract, plaintiff has breached and clearly anticipatorily breached its contract with the defendants.

146.    By reason of the plaintiff's breach of contract, defendants are entitled to recover the full value of the respective policies, to wit, $2 million and $1 million.

WHEREFORE, defendants demand judgment as follows:

(a)    Dismissing the plaintiff's complaint in its entirety as having no basis in fact or law;

(b)    Declaring the policies at issue valid and directing that if premiums are paid pursuant to the terms of the policies, plaintiff must pay the full amount of the policies pursuant to their terms;

(c)    Awarding the defendant Trust VI/Sontag damages as set forth above, including punitive damages, costs and attorneys' fees;

(d)    Awarding the defendant Trust VII/Bernstein damages as set forth above, including punitive damages, costs and attorneys' fees;

(e)    Awarding judgment interest at the maximum level required and permitted by law;

(f)    Awarding defendants costs of this action; and

(g)    Awarding such other and further relief as may seem just and equitable to this Court.

Dated: New York, New York
        December 29, 2010

ELIZABETH EILENDER, ESQ.
Attorneys for Defendants
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174

By:    _____
          *Elizabeth Eilender*

TO:

COZEN O'CONNOR
Attorneys for Plaintiff
45 Broadway
New York, New York 10006
(212) 509-9400

### *Jury Demand*

    Defendants demand a trial by jury.

Dated: New York, New York
       December 29, 2010

                          ELIZABETH EILENDER, ESQ.
                          Attorneys for Defendants
                          225 Broadway, 24th Floor
                          New York, New York 10007
                          (212) 227-2174

                        By:    *Elizabeth Eilender*

TO:

COZEN O'CONNOR
Attorneys for Plaintiff
45 Broadway
New York, New York 10006
(212) 509-9400