COZEN O'CONNOR
Christopher Raleigh
45 Broadway, 16th Floor
New York, New York 10006
(212) 509-9400
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **AMERICAN GENERAL LIFE INSURANCE COMPANY,** | § § § | |
| **Plaintiff/Counter-Defendant,** | § § | |
| **v.** | § § | |
| | § | **No. 2:10-cv-05604-SDW-MCA** |
| **TELLER FAMILY IRREVOCABLE TRUST VI, by and through its trustee, GERSON SONTAG a/k/a GERSHON SONTAG, and TELLER FAMILY IRREVOCABLE TRUST VII, by and through its trustee, BEZALEL BERNSTEIN a/k/a BTALEL BERNSTEIN,** | § § § § § § § § § | |
| **Defendants/Counter-Plaintiffs.** | § § | |

## AMERICAN GENERAL LIFE INSURANCE COMPANY'S
## <u>RESPONSE TO DEFENDANTS' MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

II.   ARGUMENTS & AUTHORITIES ..............................................6

      A.   This Court Has Personal Jurisdiction over Defendants........................7

           1.   Standard of Review ......................................................7

           2.   Legal Standard..............................................................7

           3.   Plaintiff Established Sufficient Facts to Create Personal
                Jurisdiction................................................................10

           4.   Fairness of New Jersey Court's Exercise of
                Personal Jurisdiction ..................................................14

      B.   Venue is Proper in This Court ........................................16

      C.   Defendants Fail to Justify a Change in Venue under
           Section 1404(a)..........................................................17

      D.   There is No Basis to Impose Sanctions on American General
           Pursuant to 28 U.S.C. § 1927 ......................................21

III.  OBJECTIONS TO DECLARATIONS OF BEZALEL
      BERNSTEIN AND GERSHON SONTAG ................................22

      A.   Declaration of Bezalel Bernstein......................................22

      B.   Declaration of Gershon Sontag ........................................25

IV.   CONCLUSION................................................................28

# **TABLE OF AUTHORITIES**

## Cases

*Adam v. Saenger*, 303 U.S. 59 (1938) .................................................................8

*Avdel Corp. v. Mecure*, 58 N.J. 264, 277 A.2d 207 (N.J. 1971) ...........................15

*Bates v. C&S Adjusters, Inc.*, 980 F.2d 865 (2d Cir. 1992)...................................16

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)...........................................9

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ..........................9

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ..............16

*Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.,*
    21 F. Supp. 2d 465 (D.N.J. 1998).........................................................................18

*Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287 (3d Cir. 1996).................................7

*Gulf Oil Corp, v. Gilbert,* 330 U.S. 501 (1947)................................................. 18, 19

*Halley v. Myatt*, A-1378-09T1, 2010 WL 1753110
    (N.J. Super. Ct. App. Div. May 3, 2010).............................................................15

*In re Swetland Estate,* 107 N.J. Eq. 504, 153 A. 907 (1931)...................................12

*Insurance Corp. of Ire. Ltd. v. Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982) ...........................................................................................8

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995)........................ 18, 19, 20

*Ketcham v. Charles R. Lister Int'l, Inc.,* 167 N.J. Super 5, 400 A. 2d 487. ........8, 16

*Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442 (D.N.J. 1999) ................................19

*Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 558
    A.2d 1252 (N.J. 1989) .............................................................................. 9, 10, 12

*Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628 (3d Cir. 1989)...................18

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957).....................................................9

*McKesson Corp. v. Hackensack Med. Imaging*, 197 N.J. 262, 962 A.2d 1076
 (N.J. 2009) ...............................................................................................8, 10

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009)........................7

*Metro. Life Ins. Co. v. Coddington*, 30 Backes 430 (N.J. Ch. 1942)........................4

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007)............................7

*Reliance Nat'l Ins. Co. In Liquidation v. Dana Transp., Inc.*, 376
 N.J. Super. 537, 871 A.2d 120 (N.J. Super. Ct. App. Div. 2005) ..........................7

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) .................................. 18, 20

*Silvestri v. S. Orange Storage Corp.*, 14 N.J. Super. 205, 81 A. 2d 502
 (N.J. Super. Ct. App. Div. 1951).....................................................................4, 13

*Swetland v. Swetland*, 105 N.J. Eq. 608, 149 A. 50 (N.J. Ch. 1930).......................12

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ...........................7

*Young v. Gilbert*, 121 N.J. Super. 78, 296 A.2d 87
 (N.J. Super. Ct. Law Div. 1972).........................................................................16

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).........................10

**Statutes**

28 U.S.C. § 1391 ......................................................................................................16

28 U.S.C. § 1406 ......................................................................................................18

28 U.S.C. § 1404 .................................................................................................. 18, 21

28 U.S.C. § 1927 .................................................................................................. 21, 22

N.J. STAT. ANN. § 17B:24-1.1 (West 2006).............................................................1

**Rules**

FED. R. EVID. 602 ................................................................ passim

FED. R. EVID. 701 ................................................................ passim

FED. R. EVID. 901 ................................................................ passim

FED. R. CIV. P. 12(b) (2) & (b) (3) ................................................ 6, 16

L.Civ.R. 7.2 ..................................................................... passim

N.J. RULE OF COURT 4:4-4(b) (1) ...................................................... 7

Plaintiff American General Life Insurance Company ("American General"), files this Response to Defendants' Motion to Dismiss (the "Motion"), and shows the Court as follows:

## I.    INTRODUCTION

American General filed this action to rescind two life insurance policies ("Policies") issued to Defendants, the Teller Family Irrevocable Trust VI ("Trust VI") and the Teller Family Irrevocable Trust VII ("Trust VII") (collectively, the "Trusts" or "Defendants"), insuring the life of Bluma Teller for a total of $3 million. The Trusts procured the Policies by misrepresenting Ms. Teller's net worth, income, and purpose for seeking insurance. Defendants have admitted that Ms. Teller lives in New York public housing and cannot be worth anywhere near the $24 million represented on the applications [Dkt. 8, Defendants' Answer and Counterclaim, ¶¶ 14, 20, 111, 122]. Defendants have further admitted that the Policies were procured for purpose of investment in a stranger-owned life insurance (STOLI) scheme, and that Defendants did not know Ms. Teller at the time of the applications [*Id.* ¶¶ 15–16, 21–22, 26, 29]. Such a scheme violates the insurable interest laws of several states, including New Jersey. *E.g.*, N.J. Stat. Ann. § 17B:24-1.1 (West 2006) (prohibiting the procurement of a life insurance policy if the beneficiary does not have an insurable interest in the insured's life).

1

Defendants attempt to distract this Court from Defendants' very real, and admitted, fraudulent conduct, with wild allegations regarding a grand scheme in which American General, not licensed to do business in New York, issues life insurance policies to unwitting New Yorkers by creating fictitious New Jersey addresses for the policy owners.  Defendants offer no motive for such a scheme, which is notable because American General has a sister company – The United States Life Insurance Company in the City of New York – that is licensed to sell policies in New York and does so under identical terms as American General. Defendants' outlandish allegations have nothing to do with the facts at hand, which are that Defendants fraudulently misrepresented facts to American General to induce American General to issue $3 million in insurance coverage on the life of Bluma Teller, who can be fairly characterized as Defendants' investment vehicle.

Since this suit's inception, Defendants have waged a war of paper by, among other things, submitting numerous duplicative and unnecessary letters and complaints to administrative agencies and insurance officials in New York and New Jersey.  In these unnecessary correspondences, just as in their Motion to Dismiss, Defendants allege that American General is involved in a scheme of selling New Jersey insurance to New York residents without a license to do so.  In a January 12, 2011, letter to the New Jersey Insurance Fraud Prosecutor, counsel for Defendants requests that the prosecutor bring charges against American

General and revoke its license to do business in this State. *See* Declaration of Jessica L. Wilson, Exhibit A.

Setting aside Defendants' diversions, the facts of this case show that all documents submitted by Defendants to American General indicated that New Jersey was the situs of the Trusts as well as the appropriate state for policy issuance. The policy applications list "Petreson [sic], NJ" and "Paterson, NJ" as the places of signing, and indicate that both Trusts are located in New Jersey.[1] [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-1 & B-1]. Similarly, the Trusts' Financial Questionnaires, required as part of the application process, reflect New Jersey as the place of signing. [*See* Dkt. 19-1, Affidavit of Frank Vallis,

---

[1] Defendants have submitted papers to the Court that they suggest indicate that the Trusts are actually New York trusts, governed by New York law. As an initial matter, these documents were not provided to American General during the underwriting of the Policies. Additionally, the Trust Agreement for Trust VII reflects that it was signed and notarized in New Jersey. [*See* Dkt. 14-4, Declaration of Elizabeth Eilender, Exhibit C, at 15-16]. The trust documents submitted to the Court by Defendants for Trust VI are not properly signed and notarized, bringing into question whether the trust documents are valid or legally binding. [*See* Dkt. 14-3, Declaration of Elizabeth Eilender, Exhibit B, at 22 (missing Trustee Gershon Sontag's signature), 23 (Bluma Teller's, Yehoshua Teller's and Gershon Sontag's signatures not notarized), 24 ("Schedule A" not notarized for any party), 26 (Grantor Bluma Teller's Consent not notarized), 28 (Trust Amendment not signed by Trustee Gershon Sontag), 29 (Trustee Yehoshua Teller's Consent not notarized); 30 (Trustee Gershon Sontag's Consent not signed or notarized) & 31 (Beneficiary Yehoshua Teller's Consent not notarized)]. The Trust VII Agreement suffers from similar infirmities. [*See generally* Dkt. 14-4]. It is also worth noting that Mr. Sontag's Declaration in support of the Motion does not even attempt to authenticate the Trust Agreement for Trust VI. [*See generally*, Dkt. 14-7, Sontag Declaration].

Exhibits A-2 & B-2]. Finally, the Policy Acceptance Forms indicate that the Policies were delivered in "Petreson [sic], NJ." [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-3 & B-3]. In short, all the information Defendants provided to American General indicated that the Trusts were based in New Jersey and subject to New Jersey law, and that the Policies were properly issued in New Jersey.[2]

Based on the facts set out in the policy applications and related documents, including the representations concerning the New Jersey address of the Trusts and Paterson, New Jersey as the location where the insurance applications were executed, American General issued New Jersey insurance policies to Defendants. The Policy Schedules for those Policies plainly state, "This is a New Jersey Policy." [*See, e.g.,* Dkt. 19-1, Affidavit of Frank Vallis, Exhibit A-4]. Moreover, the Policy Acceptance forms indicate that both Policies were delivered to Defendants in New Jersey. [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-3 & B-3]. Defendants accepted the Policies and paid premiums to American General

---

[2] Defendants now claim that they signed these forms in blank. This allegation is addressed in more detail below. Even if the forms were blank when Defendants signed them, which cannot be proven, it is not a helpful fact to Defendants. Defendants apparently signed these blank applications willingly. [*See* Dkt. 14-9, Bernstein Declaration, ¶ 6; Dkt 14-7, Sontag Declaration, ¶ 9, vi]. In the absence of proof that the signatures were procured through fraud, Defendants are conclusively presumed to have read the documents and agreed to be bound thereby. *E.g., Silvestri v. S. Orange Storage Corp.,* 14 N.J. Super. 205, 212, 81 A.2d 502, 505 (N.J. Super. Ct. App. Div. 1951); *Metro. Life Ins. Co. v. Coddington,* 30 Backes 430, 435 (N.J. Ch. 1942).

without ever questioning the obvious fact that the Policies were New Jersey insurance policies.  As the ultimate culmination of Defendants' fraud, Defendants seek to maintain their claims to the benefits of these New Jersey Policies, payable upon the death of Bluma Teller.   [*See* Dkt. 8, Defendants' Answer and Counterclaim, ¶¶ 109, 120] (counterclaims for declaratory judgment seeking declaration that Policies are valid and incontestable and must be honored by American General).

Despite these facts, Defendants assert that the Policies have nothing to do with New Jersey.  In their Memorandum of Law in support of their Motion, Defendants make the following unfounded accusations: (1) that "[t]he only possible basis for claiming that the trusts are New Jersey trusts is that American General and its agents injected into the policies a false mailing address for the trusts at 94 Fulton Street, Paterson, New Jersey, a commercial building" [Dkt. 14-11, Memorandum, at 3]; (2) that the Paterson, New Jersey address for the trusts was "contrived by the unilateral actions of someone on the plaintiff's behalf" [*Id.* at 6]; (3) that American General "is fully aware" that its statements claiming the trusts are New Jersey Trusts are "contrived and have no basis in fact;" [*Id.* at 3] and (4) that American General fabricated New Jersey jurisdictional facts to rescind policies after the two year contestability period [*Id.* at 5].  Defendants attempt to support these baseless allegations with declarations from the Trusts' trustees, Mr.

Bezalel Bernstein and Mr. Gershon Sontag.  However, both declarations are rife with bald speculation, unsupported and uninformed legal opinions, unfounded assertions and allegations of facts outside the knowledge of the declarants.  As described more fully below, American General objects to the trustees' declarations and requests that they be struck from the Court's record.

## II. ARGUMENTS & AUTHORITIES

Defendants challenge this Court's personal jurisdiction over them and this Court's venue, and seek to dismiss American General's Original Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) & (b)(3).  In particular, Defendants contest American General's claim that this Court has specific personal jurisdiction over them because they purchased life insurance policies that were issued in the State of New Jersey and governed by the laws of this State.  [Dkt. 1, Complaint, ¶ 7].  Alternatively, Defendants seek to dismiss the case for improper venue or to transfer venue to the Eastern District of New York.  However, Defendants place far too much emphasis on the trustees' foreign residences and unfounded conspiracy theories and fail to refute the direct evidence set out in the Original Complaint establishing personal jurisdiction in this State and venue in this Court.  In particular, Defendants completely ignore the Trusts' purposeful acts to enter into a contract in this State and take advantage of the protections of this State's laws.  Defendants' Motion should be denied in all respects.

6

## A. <u>This Court Has Personal Jurisdiction over Defendants</u>

### 1. Standard of Review

Plaintiff bears the burden of demonstrating the facts that establish personal jurisdiction, and "once a defendant has raised a jurisdictional defense," the plaintiff must "prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996). The "plaintiff[s] need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.,* 496 F.3d 312, 316 (3d Cir. 2007) (alterations in original) (internal quotation marks omitted). Moreover, it is well-settled that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff. *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330-31 (3d Cir. 2009); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 457 (3d Cir. 2003).

### 2. Legal Standard

New Jersey's only limitation upon the exercise of long-arm jurisdiction over a non-resident defendant is that it be "consistent with due process of law." *See Reliance Nat'l Ins. Co. In Liquidation v. Dana Transp., Inc.,* 376 N.J. Super. 537, 543, 871 A.2d 120 (N.J. Super. Ct. App. Div. 2005) (quoting N.J. RULE OF COURT 4:4-4(b)(1)). "[A]s a consequence, jurisdiction has been exercised wherever possible with a liberal and indulgent view if the facts reasonably support the

presence of the flexible concepts of 'fair play and substantial justice.'" *Ketcham v. Charles R. Lister Int'l, Inc.,* 167 N.J. Super. 5, 7, 400 A.2d 487 (N.J. Super. Ct. App. Div.), *cert. denied,* 81 N.J. 339, 407 A.2d 1213 (1979).  To ensure that the exercise of personal jurisdiction over nonresident defendants complies with the due process requirement of the Fourteenth Amendment, New Jersey courts engage in a two-part inquiry, that is, the courts first seek to determine whether the nonresident defendant or foreign corporation has certain minimum contacts with the forum state, and then determine whether the assumption of jurisdiction by the forum state offends "traditional notions of fair play and substantial justice." *McKesson Corp. v. Hackensack Med. Imaging,* 197 N.J. 262, 275-76, 962 A.2d 1076, 1084 (N.J. 2009).

Unlike subject matter jurisdiction, personal jurisdiction can be intentionally waived by the consent of a defendant, or for various reasons a defendant may be estopped from raising the issue.  *Insurance Corp. of Ire. Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 704 (1982).  For example, by voluntarily using certain procedures of a state, a defendant may be deemed to have constructively consented to the personal jurisdiction of that state's courts.  *See id.; see also Adam v. Saenger*, 303 U.S. 59, 67-68 (1938) ("There is nothing in the Fourteenth Amendment to prevent a state from adopting a procedure by which a judgment *in personam* may be rendered in a cross-action against a plaintiff in its courts . . . .  It

is the price which the state may exact as the condition of opening its courts to the plaintiff").

A defendant may also create personal jurisdiction by entering into a contract that has substantial connections to the forum state. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."). When determining whether a defendant purposefully established minimum contacts within the forum by way of a contractual relationship, the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing must be evaluated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

Additionally, New Jersey would permit the exercise of personal jurisdiction over a nonresident defendant who committed a single tortious act, whether negligent or intentional, within the State. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992). For example, the State's highest court found personal jurisdiction over a tortfeasor who never set foot in New Jersey based on telephone negotiations and mailings directed toward the State. *See Lebel v. Everglades Marina, Inc.,* 115 N.J. 317, 326, 558 A.2d 1252 (N.J. 1989) ("Remember that in this case it is alleged that the defendant's representations via mail and telephone to New Jersey were fraudulent").

Once a court has determined there are sufficient minimum contacts, it must consider whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *McKesson Corp.,* 197 N.J. at 278.

> The protection against inconvenient litigation is typically described in terms of "reasonableness" or "fairness." [ ] The relationship between the defendant and the forum must be such that it is reasonable to require the corporation to defend the particular suit which is brought there. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief . . . ; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292-93 (1980). However, unlike the "minimum contacts" analysis, the burden for the fairness question shifts to the defendant, "for it is the 'nonresident defendant who has been found to have minimum contacts with the forum [who] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *McKesson Corp.,* 197 N.J. at 278 (quoting *Lebel,* 115 N.J. at 328).

### 3. Plaintiff Established Sufficient Facts to Create Personal Jurisdiction

As described above, American General has established sufficient facts to meet the due process standard for personal jurisdiction in this State.   First, Defendants clearly intended to and did in fact enter into a contract in New Jersey

that is subject to the laws of this state.  Specifically, Defendants applied for and received the Policies, including the Policy Schedules indicating that the policies are New Jersey policies. [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-1, A-4, B-1].   Defendants also signed the Policy Acceptance forms that plainly indicate that the Policies were accepted in New Jersey.  [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-3 & B-3].  Defendants continue to assert their intent to enforce the obligations they claim were created by the New Jersey life insurance Policies. [*See, e.g.*, Dkt. 8, Defendants' Answer and Counterclaim, ¶¶ 109, 120; Dkt. 14-7, Sontag Declaration, at ¶19; Dkt. 14-9, Bernstein Declaration, at ¶20].

Second, Defendants' course of dealing prior to and after entering into the insurance contracts indicates their intent to do business in New Jersey and take advantage of this State's laws.  The Trust Agreement for Trust VII was signed and notarized in New Jersey. [*See* Dkt. 14-4, Declaration of Elizabeth Eilender, Exhibit C, at 15-16].  The Trusts have no explanation for this.  Also, document after document signed by Defendants in connection with the application for and purchase of the Policies represents that the documents were signed in New Jersey and that the Defendant Trusts were New Jersey trusts. [*See generally* Dkt. 19-1, Affidavit of Frank Vallis].   Although Defendants now dispute the address information represented in these policy application documents, at this stage of the

11

proceeding, all factual disputes are to be determined in favor of Plaintiff American General.

Even if Defendants are able to persuade this Court that the New Jersey address listed on the signed insurance applications was false, the Defendants cannot escape this Court's exercise of personal jurisdiction over them. This entire case stems from Defendants' scheme to submit fraudulent insurance applications to American General as part of a STOLI scheme. Evidence that Defendants signed blank documents as part of their scheme is hardly exonerative. Even if the trustees never set foot in this State, the Trusts' fraudulent activities alone are sufficient to establish specific personal jurisdiction.[3]  *See Lebel,* 115 N.J. at 327.

Additionally, Defendants cannot now disclaim responsibility for the fraudulent information contained in their signed insurance applications. It has long been the law of this State that a party is conclusively presumed to have read

---

[3] It must be noted that the Defendants in this case are the Trusts – not the individual trustees. As such, Mr. Sontag's and Mr. Bernstein's declarations, claiming no connection to New Jersey, are not relevant. There is sufficient evidence connecting the Trusts to New Jersey, and that is the determinative issue. *Cf. Swetland v. Swetland*, 105 N.J. Eq. 608, 614, 149 A. 50, 52 (N.J. Ch. 1930) *aff'd sub nom. In re Swetland Estate*, 107 N.J. Eq. 504, 153 A. 907 (1931) (holding that "courts of the situs of the trust have jurisdiction to direct its administration and to require the trustee to account").

documents the party has signed and, in the absence of proof that a signature was obtained through fraud, the party is bound by the terms of those documents. *Silvestri v. S. Orange Storage Corp.*, 14 N.J. Super. 205, 212, 81 A.2d 502, 505 (N.J. Super. Ct. App. Div. 1951) ("[A]ffixing a signature to a contract creates a conclusive presumption, except as against fraud, that the signer read, understood, and assented to its terms."). Despite the objectionable declarations of Defendants' trustees, which make wild allegations of fraud against American General and/or its agents based on nothing more than bald conjecture and speculation, Defendants have no proof that their signatures were fraudulently procured. In fact, Defendants apparently signed the blank applications willingly. [*See* Dkt. 14-9, Bernstein Declaration, ¶ 6; Dkt 14-7 Sontag Declaration, ¶ 9, vi]. Absent any legitimate evidence of fraud on the part of anyone other than themselves, Defendants are bound by their representations in the life insurance applications and in numerous other documents they submitted to American General, which state that the Trusts were located in New Jersey and that the insurance Policies were received and delivered in this State. [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-1, A-2, A-3, B-1, B-2 & B-3].

American General relied on Defendants' representations and issued the Policies. Moreover, Defendants never questioned the fact that the Policies are plainly New Jersey insurance policies. [*See, e.g.,* Dkt. 19-1, Affidavit of Frank

Vallis, Exhibit A-4 ("This is a New Jersey Policy")].  After receiving the Policies, Defendants have sought the protection of the laws of this State and have reached out to governmental officials in this State in an attempt to retain those Policies and enforce them and to otherwise harm American General.   As noted above, Defendants have made fraud allegations against American General to the New Jersey Insurance Fraud Prosecutor in connection with the American General's issuance of the Policies.   [Declaration of Jessica L. Wilson, Exhibit A].   In addition, Defendants continue to seek the benefit of the Policies. [*See, e.g.*, Dkt. 8, Defendants' Answer and Counterclaim, ¶¶ 109, 120; Dkt. 14-7, Sontag Declaration, at ¶19; Dkt. 14-9, Bernstein Declaration, at ¶20].   In light of their numerous past and continuing contacts with this State related to the insurance contracts in question, it is reasonable for Defendants to expect to be called to account for their actions in this State.[4]

### 4. Fairness of New Jersey Court's Exercise of Personal Jurisdiction

Not only do Defendants have sufficient intentional contacts with New Jersey to support this Court's exercise of specific personal jurisdiction, the close

---

[4] American General believes that the facts in front of the Court are sufficient to find personal jurisdiction over Defendants.  However, to the extent the Court believes that further facts are required and/or that jurisdictional discovery may be helpful to the Court's analysis, American General respectfully requests the opportunity to conduct such jurisdictional discovery.

proximity between the New York-based trustees and this Court leaves little question that the exercise of personal jurisdiction in this case comports with traditional notions of fair play and substantial justice.[5]   Defendants bear the burden of showing that this State's exercise of personal jurisdiction over them is unfair. They have failed to carry this burden by wholly failing to discuss the fairness prong of the analysis.  Notwithstanding Defendants' failure, numerous courts have evaluated this very question of the fairness of trying a New York resident in New Jersey and reached the same conclusion.  *See, e.g., Halley v. Myatt*, A-1378-09T1, 2010 WL 1753110, at *8 (N.J. Super. Ct. App. Div. May 3, 2010) ("In our view, trying defendant, a New York resident, in a New Jersey court, presents no special burden to defendant since the two States are contiguous."); *Avdel Corp. v. Mecure*, 58 N.J. 264, 273, 277 A.2d 207, 212 (N.J. 1971) (holding that "there is certainly no special inconvenience to defendant since the two states are contiguous"); *Ketcham*, 167 N.J. Super. at 10, 400 A.2d at 489 (finding that "[s]ince the City of New York is contiguous and close to New Jersey, there appears to be no great inconvenience for defendant to defend the action in this forum"); *Young v. Gilbert,* 121 N.J. Super. 78, 87, 296 A.2d 87 (N.J. Super. Ct. Law Div. 1972) (finding "no special inconvenience to this defendant, since New Jersey and New York are contiguous").

---

[5] Again, based on the information provided to American General, the Trusts are located in New Jersey.  The fact that the trustees live in New York is of no particular consequence.

For these reasons, the Court should deny Defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

### B. Venue is Proper in This Court

Defendants' motion to dismiss for improper venue also lacks merit and should be denied. Pursuant to the general venue statute, a complaint may be filed where a substantial part of the events or omissions giving rise to the claim occurred. *See* 28 U.S.C. § 1391(a)(2). When making this determination, a court need not determine which district among multiple potential forums is the "best" venue, but rather whether the district the Plaintiff selected has a substantial connection to the claim. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). The venue statute also does not require a majority of the events to take place in Plaintiff's chosen forum. *Cottman Transmission*, 36 F.3d at 294. Thus, venue may be proper in a district even if another potential district has greater connections to the parties or issues in dispute.

Defendants contend that New Jersey has no connection to the issues in this case other than the 94 Fulton Street, Paterson, New Jersey address listed on the application documents as the Trusts' address.[6] However, as shown previously, the

---

[6] Defendants assert (without any supporting evidence) that this address was "contrived by American General and/or its agents." [*See* Dkt. 14-11,

city of Paterson, New Jersey was not just the Trusts' listed address, it was also written on numerous insurance application documents, including both of the life insurance applications and both financial questionnaires, as the location where those documents were executed.   [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-1, A-2, B-1 & B-2].   It is those same life insurance applications that American General asserts contain many of the fraudulent representations that form the basis for this lawsuit.   Paterson, New Jersey was also the location that Defendants listed as the place where the Policies were issued and accepted. [*See* Dkt. 19-1, Affidavit of Frank Vallis, Exhibits A-3, A-4, & B-3].   These facts, taken together, demonstrate that a substantial part of the events or omissions that form the basis for this case took place in the venue American General selected for this lawsuit.   Accordingly, American General has satisfied the requirements of the general venue statute and Defendants' motion to dismiss for improper venue should be denied.   Additionally, because venue is proper in this district, there is also no basis to transfer the suit to any other district pursuant to 28 U.S.C. 1406(a).

### C. Defendants Fail to Justify a Change in Venue under Section 1404(a)

In the alternative, Defendants move to transfer venue of this matter to the Eastern District of New York under 28 U.S.C. § 1404(a).   Section 1404(a)

---

Memorandum, at 4].   American General denies this baseless and inflammatory allegation.

provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The decision regarding whether to transfer venue falls within the sound discretion of the trial court. *See Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628, 631-32 (3d Cir. 1989); *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998). However, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Additionally, in most cases, the plaintiff's forum choice is "a paramount consideration in any determination of a transfer request," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970), and given great weight in a motion to transfer venue. *See Lony*, 886 F.2d at 633. Indeed, "unless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Some courts have held that the choice of forum by a plaintiff is considered to be presumptively correct, and it is the defendant's obligation to rebut that presumption. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 452 (D.N.J. 1999).

While there is no definitive formula or list of the factors to consider, courts often consider many variants of the private and public interest factors enunciated by the Supreme Court and further developed by the Third Circuit. *See Gulf Oil,*

330 U.S. at 508-09; *Jumara,* 55 F.3d at 879-80. These factors fall into two groups: those relating to the private convenience of the litigants and those affecting the public interest in the fair and efficient administration of justice. *See Jumara,* 55 F.3d at 879-80.

Private interests include: (1) the "plaintiff's forum preference," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879 (citations omitted).

Public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

Once again, Defendants fail to meet their burden to demonstrate that the personal and private interest factors require a forum transfer. With respect to the

private interest factors, Defendants wholly ignore Plaintiff's choice of forum, which is the paramount consideration. *See Shutte*, 431 F.2d at 25. Instead, they focus on the location of the trustees, the insured and the insurance agent, all of whom they assert are located in New York. However, as pointed out above, numerous courts have held that there is little inconvenience for a party residing in New York City to participate in a trial in New Jersey. Moreover, the convenience of the witnesses only enters into the Court's consideration if those witnesses will be unavailable for trial if the case is tried in this forum. *See Jumara*, 55 F.3d at 879. Defendants have not made any showing that any of the witnesses they mention will be so inconvenienced that they will be unable to attend trial in a contiguous state.

The only public interest factor that Defendants raise relates to the question of whether New York or New Jersey law applies to the Policies. Defendants begin at the end of the choice of law analysis and apply New York law to determine that New York law should apply. Based on this self-fulfilling analysis, Defendants incorrectly assert that "[t]here is no question that in this case the law of New York would apply." American General disputes Defendants' view that New York law applies to this case. Nonetheless, even if New York law were to apply to this case, this is not sufficient to overcome proper and convenient venue in this State.

Because Defendants have not presented sufficient basis for this court to override the strong presumption in favor of Plaintiff's choice of forum, the Court should deny Defendants' section 1404(a) motion to transfer venue.

**D. There is No Basis to Impose Sanctions on American General Pursuant to 28 U.S.C. § 1927**

Finally, Defendants assert that the Court should impose sanctions merely because American General did not agree to stipulate to venue in the Eastern District of New York in response to the meritless and self-serving demand of defense counsel. As this Response demonstrates, American General has properly brought this case in New Jersey and has properly asserted venue in this District. Additionally, there is absolutely no basis to assert that American General's lawsuit is "vexatious" or brought in bad faith. To the contrary, as the introduction to this Response makes clear, Defendants themselves concede that Ms. Teller lives in New York public housing and cannot be worth anywhere near the $24 million represented on the life insurance applications [Dkt. 8, Defendants' Answer and Counterclaim, ¶¶ 14, 20, 111, 122], that the Policies were procured for purpose of investment in a STOLI scheme, and that Defendants did not know Ms. Teller at the time of the applications. [*Id.* ¶¶ 15–16, 21–22, 26, 29]. In light of Defendants' admissions, there is little question that American General has a good faith basis to bring this rescission suit. Sanctions pursuant to 28 U.S.C. § 1927 are completely unwarranted.

## III.   OBJECTIONS TO DECLARATIONS OF BEZALEL BERNSTEIN AND GERSHON SONTAG

Finally, Pursuant to Local Civil Rule 7.2(a) and the Federal Rules of Civil Procedure and Evidence, American General objects to and moves to strike the Declarations of Bezalel Bernstein and Gershon Sontag because those Declarations make numerous representations of fact outside the personal knowledge of the declarants, make legal arguments, and/or attempt to interpret the content of documents that speak for themselves.  Specifically, American General objects as follows:

### A. **Declaration of Bezalel Bernstein**

¶ 11      Plaintiff objects to the representation in Paragraph 11 that avers that the declaration of trust for the Teller Family Irrevocable Trust VII was "prepared by a lawyer *whom I was advised* AIG, through Mr. Weber or his associate, Mr. Epstein, had retained." (Emphasis added)  The declarant obviously lacks personal knowledge of whether AIG was the party (if any) that retained a lawyer to prepare the declaration of trust. Mr. Bernstein states that he was advised of this purported fact by some unnamed third party.  This statement is clearly outside the personal knowledge of the declarant. FED. R. EVID. 602; L.Civ.R. 7.2(a).

Plaintiff further objects to the extent this paragraph seeks to introduce Exhibit A, the purported trust agreement, without properly authenticating it. *See* FED. R. EVID. 901.

¶ 13      Plaintiff objects to Paragraph 13 to the extent that it asserts unqualified legal opinions and summarizes the

content of the declaration of trust, which speaks for itself. Specifically, Paragraph 13 states: "The declaration also made it clear that the trust was governed by the laws of the State of New York, and that the situs of the trust was the State of New York; see Article XVI." The declaration of trust says what it says. The declarant's summary of the document's language and the declarant's lay interpretation of the legal effect of that language are not evidence. *See* FED. R. EVID. 701; L.Civ.R 7.2(a).

¶ 16    Plaintiff objects to the final sentence of Paragraph 16, which lacks foundation and asserts facts outside the personal knowledge of the declarant. The sentence states, "All of that information [in the application for the life insurance policy] was provided either by Ms. Teller, or more likely by Mr. Weber, AIG's agent, or Yoel Epstein, another AIG agent, with whom Mr. Webber claimed to be working on these policies." The declarant clearly does not have personal knowledge of the individual(s) who purportedly made the statements in the life insurance application and is engaging in bald speculation when he suggests the names of three different individuals "likely" to have provided that information. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶ 18    Plaintiff objects to Paragraph 18 in which declarant argues that statements in Plaintiff's Complaint, including statements made in ¶ 4 that Trust VII is organized under the laws of the State of New Jersey, "is [sic] a willful and deliberate falsehood." This is a statement of legal opinion, lacks foundation and is not based on declarant's personal knowledge. *See* FED. R. EVID. 602, 701; L.Civ.R. 7.2(a). Plaintiff further objects to the extent Paragraph 18 attempts to describe the content of the declaration of trust, which speaks for itself. *See* L.Civ.R. 7.2(a).

¶ 19    Plaintiff objects to Paragraph 19 to the extent that declarant asserts his unqualified legal opinion that "New

23

Jersey has absolutely nothing to do with either this insurance policy or the trust." *See* FED. R. EVID. 701; L.Civ.R. 7.2(a).   Plaintiff further objects to the extent that this paragraph asserts that Mr. Weber and Mr. Epstein, as AIG's[7] purported agents, created the trust and that they did so to induce him to advance premiums for the life insurance policy on Ms. Teller as a pure investor.   Declarant has not established any foundation for this assertion or that he has any personal knowledge of the facts asserted or the alleged motives of American General's purported agents.   *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).   Plaintiff further objects to the declarant's assertions of fact in this paragraph that are outside of his personal knowledge and purportedly conveyed to him by Mr. Weber, including declarant's assertion that the transaction was legal, that an attorney Weber previously used was drawing up the trust, that this was trust VII, "that AIG was fully aware of these trusts and that [Bernstein] was not in any way related to Ms. Teller, the insured, but was an outside investor." *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶ 23        Plaintiff objects to Paragraph 23 because it asserts unqualified legal opinions concerning the contestability of the policy and concerning the propriety or equity of allowing American General to retain policy premiums in the event that the policies are voided. The declarant's lay opinion testimony regarding these legal issues is inadmissible. *See* FED. R. EVID. 701; L.Civ.R. 7.2(a).

¶ 24        Plaintiff objects to Paragraph 24 because it lacks foundation, makes a statement outside the declarant's personal knowledge and contains the declarant's speculative lay opinion testimony regarding his fraud allegation against AIG and its purported agents, Mr. Weber and Mr. Epstein.   *See* FED. R. EVID. 602, 701; L.Civ.R. 7.2(a).

---

[7] More properly, American General Life Insurance Company.

¶ 25        Plaintiff objects to Paragraph 25 because it seeks to relate facts outside the declarant's personal knowledge and attempts to characterize American General's claims in this case, which speak for themselves. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶26        Plaintiff objects to declarant's assertion that the firm Starlife Partner Agency Inc. is an agent for AIG. Declarant has not established any foundation for that assertion and declarant lacks personal knowledge of any relevant agency agreements. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a). Plaintiff also objects to Paragraph 26 to the extent it purports to describe the content of the trust agreement related to the situs of the trust. The trust agreement speaks for itself and the declarant's legal opinion regarding that document is not competent evidence. *See* FED. R. EVID. 701; L.Civ.R. 7.2(a). Plaintiff further objects to Paragraph 26 to the extent that declarant asserts his unqualified legal opinion that "New Jersey has absolutely nothing to do with any of the issues in the case." *See* FED. R. EVID. 701; L.Civ.R. 7.2(a).

¶ 27        Plaintiff objects to Paragraph 27 to the extent it asserts that the address of the trust in Paterson, New Jersey "is a fabrication by the insurance company or its agents." This statement lacks foundation and asserts facts outside the personal knowledge of the declarant. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a). Plaintiff also objects to the final sentence of Paragraph 27 to the extent it attempts to convey the purported findings of declarant's "attorney's investigation," which is also clearly outside his personal knowledge. *Id.*

## B. <u>Declaration of Gershon Sontag</u>

¶ 2        Plaintiff objects to Paragraph 2 to the extent that it contains statements outside declarant's personal knowledge and attempts to convey information

purportedly set forth in the trust documents. Specifically, without establishing any foundation as to his personal knowledge of the purported facts, declarant asserts that the unnamed New York lawyer that purportedly created the trust did so at the request of AIG's agent, David Weber. Declarant then attempts to describe what is "specifically set forth" in the trust documents which speak for themselves. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶ 3         Plaintiff objects to Paragraph 3, which attempts to quote a portion of the trust agreement. The quoted portion is not a complete recitation of the trust document which is the best evidence of its provisions. *See* L.Civ.R. 7.2(a).

¶¶ 4, 5     Plaintiff objects to these paragraphs to the extent that they attempt to convey the substance of American General's complaint, which speaks for itself. *See* L.Civ.R. 7.2(a).

¶ 7         Plaintiff objects to the final sentence of Paragraph 7, which states, "This was simply an address apparently fabricated by American General and its agents." This is an outrageous and defamatory statement, about which the declarant "apparently" lacks any personal knowledge. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶ 8         Plaintiff objects to Paragraph 8, which conveys no facts and is a pure statement of declarant's uninformed, lay legal opinion. Moreover, declarant's speculation concerning what American General purportedly believes about New Jersey and New York law lacks foundation, is not based on personal knowledge and is simply not true. This Paragraph should be struck pursuant to FED. R. EVID. 602, 701; L.Civ.R. 7.2(a).

¶ 9         Plaintiff objects to the numerous subparagraphs of Paragraph 9 as follows:

viii.     American General's records are best
          evidence of what they reflect; declarant has
          no personal knowledge of what American
          General is "fully aware" (FED. R. EVID.
          602; L.Civ.R. 7.2(a)); declarant's statement
          that "the New Jersey address was created
          by [American General] and its agents
          apparently because American General is
          not licensed to sell life insurance in New
          York" once again lacks foundation and is
          made without any personal knowledge
          (FED. R. EVID. 602; L.Civ.R. 7.2(a));

ix.       Declarant's statement about the policies
          American General allegedly sold
          "according to Simon Weinstock" is made
          without personal knowledge (FED. R. EVID.
          602; L.Civ.R. 7.2(a));

xi.       Declarant's statement is made without
          personal knowledge and is purportedly
          based on "the records available" to the
          declarant, which are the best evidence of
          what they say (FED. R. EVID. 602; L.Civ.R.
          7.2(a));

xii.      Declarant offers a legal opinion, which is
          not competent evidence (FED. R. EVID. 701;
          L.Civ.R. 7.2(a));

xii., xiv.  These two subparagraphs reflect baseless,
          and inflammatory speculation concerning
          the motives of American General and its
          attorneys and both should be struck
          pursuant to FED. R. EVID. 602; L.Civ.R.
          7.2(a);

xv.       Plaintiff objects to the extent this
          subparagraph offers declarant's legal
          opinion regarding whether there is

27

jurisdiction over the trustee in New Jersey and whether a lawsuit in New Jersey would violate his due process rights (FED. R. EVID. 701; L.Civ.R 7.2(a)).

¶ 20       Plaintiff objects to Paragraph 20 because it lacks foundation, makes a statement outside the declarant's personal knowledge and contains the declarant's speculative opinion testimony regarding his fraud allegation against American General and its purported agents, Mr. Weber and Mr. Epstein. *See* FED. R. EVID. 602, 701; L.Civ.R. 7.2(a).

¶ 21       Plaintiff objects to Paragraph 21 because it seeks to relate facts outside the declarant's personal knowledge, and attempts to characterize American General's claims in this case, which speak for themselves. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

¶ 23       Plaintiff objects to Paragraph 23 to the extent it asserts that the address of the trust in Paterson, New Jersey "is a fabrication by the insurance company or its agents." This statement lacks foundation and asserts facts outside the personal knowledge of the declarant. *See* FED. R. EVID. 602; L.Civ.R. 7.2(a).

## IV.   CONCLUSION

For the above reasons, Plaintiff American General Life Insurance Company prays that this Court deny Defendants' Motion to Dismiss, strike requested portions of the Declarations of Bezalel Bernstein and Gershon Sontag, and award all other relief to which it may be justly entitled.

DATED:   February 22, 2011.

Respectfully submitted,

By:  /s/ Christopher Raleigh
Christopher Raleigh, Esq.
COZEN O'CONNOR
45 Broadway, 16th floor
New York, New York 10006
*Attorneys for Plaintiff*
*American General Life Insurance Company*


OF COUNSEL:

EDISON, MCDOWELL & HETHERINGTON, LLP

David McDowell
Texas Bar No. 00791222
Jessica L. Wilson
Texas Bar No. 24028230
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580 (Telephone)
(713) 337-8850 (Facsimile)
E-mail: david.mcdowell@emhllp.com
E-mail: jessica.wilson@emhllp.com

## CERTIFICATE OF SERVICE

 I hereby certify that on this the 22nd day of February, 2011 a true and correct copy of the foregoing has been filed through the CM/ECF system. It is my understanding that a copy of the foregoing will be forwarded by email to all attorneys of record in this case.

/s/ Christopher Raleigh   <br>Christopher Raleigh