Elizabeth Eilender, Esq.
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174
*Attorney for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

----------------------------------------------------------------------x

AMERICAN GENERAL LIFE INSURANCE COMPANY,                    Case No.
                                                            2:10-CV-05604-SDW-MCA

Plaintiff ,

   -against-

TELLER FAMILY IRREVOCABLE TRUST VI,
by and through its trustee, GERSON SONTAG a/k/a
GERSHON SONTAG, and TELLER FAMILY
IRREVOCABLE TRUST VII, by and through its trustee,
BEZALEL BERNSTEIN a/k/a BTALEL BERNSTEIN,

Defendants.

----------------------------------------------------------------------x

***MEMORANDUM OF LAW***
***<u>IN REPLY</u>***

L<small>AW</small> O<small>FFICE OF</small>
E<small>LIZABETH</small> E<small>ILENDER</small>, E<small>SQ.</small>
225 B<small>ROADWAY</small>, 24<sup>T<small>H</small></sup> F<small>LOOR</small>
N<small>EW</small> Y<small>ORK</small>, N<small>EW</small> Y<small>ORK</small> 10007
(212) 227-2174

## ***TABLE OF CONTENTS***

***Page***

Table of Authorities                                                                                   i

Introductory Statement                                                                          1

POINT I

A TRUST IS AN ENTITY AND CANNOT BE SUED;
IT IS ONLY THE TRUSTEE THAT CAN BE SUED                               7

POINT II

PLAINTIFF HAS FAILED TO CARRY ITS BURDEN
OF SHOWING THERE IS PERSONAL JURISDICTION
OVER THE TRUSTS IN NEW JERSEY                                              7

POINT III

THE ARGUMENT BY PLAINTIFF THAT DEFENDANTS
ARE BOUND BY THE WORDS NEW JERSEY IN
VARIOUS DOCUMENTS IS FRIVOLOUS                                        11

POINT IV

IF THIS CASE IS NOT DISMISSED FOR LACK OF
PERSONAL JURISDICTION IN THE STATE OF NEW
JERSEY, AS IT SHOULD BE, VENUE SHOULD BE
TRANSFERRED TO THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF NEW YORK                              12

POINT V

SANCTIONS SHOULD BE IMPOSED UPON COUNSEL
FOR AMERICAN GENERAL PURSUANT TO 28 U.S.C. 1927        14

CONCLUSION                                                                                    15

# *TABLE OF AUTHORITIES*

***Page***

*Cf Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n,*
846 F. Supp. 374, 378, 390 (B.D. Pa. 1994)                9

*Dayhoff Inc. v. H.J. Heinz Co.,*
86 F.3d 1287 (1996)                8

*Harrows Stores, Inc.* v. *Hanover Ins. Co.,*
315 N.J. Super. 547, 552, 719 A.2d 196, 199 (App. Div. 1998)                10
*Kramer v. Phoenix Life Insurance Co.,*
15 N.Y.3d 539, 914 N.Y.S.2d 709 (2010)                2

*Lincoln National Life Insurance Company v. Calhoun,*
596 F.Supp.2d 882 (DNJ 2009)                2

*Lincoln National Life Insurance Company v. Schwartz,*
201 WL 3283550 (DNJ 2010)                3

*Moran v. Joyce,*
125 NJL 558, 18 A.D.2d 708 (1941)                7

*Navaro Savings Association v. Lee,*
446 U.S. 458, 100 S.Ct. 1778 (1980)                7

*Paterson* v. *Federal Bureau of Investigation,*
893 F.2d 595 (3d Cir 1990)                8

*Pinker v. Roche Holdings Ltd.,*
292 F.3d 361, 368 (3d Dept. 2002)                11

*Reliastar Life Insurance Company of New York v. Leopold,*
192 Misc.2d 385, 745 N.Y.S.2d 810 (N.Y.Sup. 2002)                2

*Restatement (Second) of Conflicts* (1971)                10

*Victory Int'l* v. *Perry Ellis Int'l.,*
2008 WL 65177, #4 (D.N.J. Jan. 2, 2008)
(Civ No. 07-0375 (WHW), Walls, J.)                8

*Security Mutual Life Insurance Company v. Herpaul,*
36 A.D.3d 449, 827 N.Y.S.2d 141 (1st Dept. 2007)                2

*Silverstri v. S. Orange Storage Corporation,*
14 N.J. Super. 205, 212, 81 A.2d 502, 505
(N.J. Super.Ct. App. Div.(1951)                11

### *Statutes*

Fed.R.Civ.P. 17                                             7

Fed.R.Civ.P. 602                                            8

Fed.R.Civ.P. 901                                            8

NJSA 17.33A-7a                                              3

Rule 12(b)(2)                                               8

28 U.S.C. 1927                                          14-15

Elizabeth Eilender, Esq.
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174
*Attorney for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------------x

AMERICAN GENERAL LIFE INSURANCE COMPANY,

                         Plaintiff ,

      -against-

TELLER FAMILY IRREVOCABLE TRUST VI,
by and through its trustee, GERSON SONTAG a/k/a
GERSHON SONTAG, and TELLER FAMILY
IRREVOCABLE TRUST VII, by and through its trustee,
BEZALEL BERNSTEIN a/k/a BTALEL BERNSTEIN,

                       Defendants.

-------------------------------------------------------------------x

Case No.
2:10-CV-05604-SDW-MCA

### *MEMORANDUM OF LAW*
### *IN REPLY*

    Defendants are submitting this memorandum of law in reply to plaintiff's response to the motion to dismiss or to transfer venue to the United States District Court for the Eastern District of New York if the action is not dismissed.

### ***Introductory Statement***

    The introductory statement in plaintiff's brief contains numerous misleading innuendoes which should be corrected.

1.      The defendants in this case are: Teller Family Irrevocable Trust VI, by and through its trustee, Gerson Sontag a/k/a Gershon Sontag, and Teller Family Irrevocable Trust VII, by and through its trustee, Bezalel Bernstein a/k/a Btalel Bernstein. Gershon Sontag and Bezalel Bernstein provided no information regarding Mrs. Teller's financial situation because they had no such information. They were simply investors in a life insurance policy as they made clear, which is entirely legal under the laws of the State of New York. *See Kramer v. Phoenix Life Insurance Co.,* 15 N.Y.3d 539, 914 N.Y.S.2d 709 (2010).

2.      Plaintiff's own documents make it clear that it investigated Mrs. Teller's financial condition and that all the information was provided by the Tellers and no information by Mr. Sontag or Mr. Bernstein as trustees (Exhibit A to Sontag declaration dated March 7, 2011). If there were any misrepresentations, they have been waived because, among other reasons, the policies are more than two years old and are incontestible. *See Security Mutual Life Insurance Company v. Herpaul,* 36 A.D.3d 449, 827 N.Y.S.2d 141 (1st Dept. 2007); and *Reliastar Life Insurance Company of New York v. Leopold,* 192 Misc.2d 385, 745 N.Y.S.2d 810 (N.Y.Sup. 2002).

3.      The implication that investing in life insurance policies, which plaintiff pejoratively labels a "STOLI" scheme, as somehow improper is false. It is perfectly legal under *Kramer, supra.* There is nothing in New Jersey law prohibiting STOLI policies, nor has plaintiff's counsel cited to any case prohibiting it. As Judge Pisano of this Court recognized in another "STOLI" case, *Lincoln National Life Insurance Company v. Calhoun,* 596 F.Supp.2d 882 (DNJ 2009), the trade in life insurance policies is big business, and in 2005 there were $12 billion worth of STOLI policies apparently traded, 596 F.Supp.2d at 885. Judge Pisano also pointed out that according to a study, eighty-nine percent of life insurance policies lapsed prior to the secondary

market developing for the sale of life insurance policies. This is an advantage insurance companies no longer have.

4.     American General has flooded this Court with cases which do not belong here (Exhibit A to Eilender declaration dated March 7, 2011), hoping to take advantage of a New Jersey statute, NJSA 17.33A-7a.

5.     American General or its agents would create fictitious New Jersey addresses, as is shown in the case of the policy on Vera Kerpel for which a complaint has been filed on behalf of Shimshon Mandel with the New York Insurance Department (Exhibit B to Eilender declaration dated March 7, 2011); *see also* the decision of *Lincoln National Life Insurance Company v. Schwartz,* 201 WL 3283550 (DNJ 2010), a decision by Judge Wolfson of this Court where again American General claims that the documents for an insurance policy were allegedly signed in New Jersey by a resident of Brooklyn, New York. *See also, American General v. Oberlander,* 10-01902 (WHW), pending in this Court, where American General claims a Brooklyn insured and a Brooklyn trustee allegedly created a trust with a New Jersey address.

Apparently by some mysterious coincidence, whenever an American General policy is issued to a Brooklyn, New York resident, the elderly person who lives in Brooklyn, New York, travels to New Jersey to sign documents, or creates a New Jersey trust. It is obvious that the scheme is for American General to put down on the policy application a fraudulent New Jersey address because it is not licensed to sell life insurance in the State of New York, and, in fact, is now being investigated by the New York Insurance Department for doing so (Exhibit G to Sontag declaration of March 7, 2011).

3

6.      The statement that the defendants sought to make use of the New Jersey Insurance Department by filing a complaint with the New Jersey Insurance Department is likewise false. It was the plaintiff, in an attempt to cover up its conduct, that filed a complaint with the New Jersey Insurance Department (Exhibit E to Sontag declaration of March 7, 2011), and defendants' counsel simply responded (Exhibit F to Sontag declaration of March 7, 2011). Rather, defendants filed a complaint with the New York State Insurance Department.

7.      Some of the American General agents, such as Mr. Gutwein who was the agent for the Kerpel STOLI policy (Exhibit B to Eilender declaration dated March 7, 2011) have recently been indicted in the United States District Court for the Eastern District of New York (Exhibit C to Eilender declaration of March 7, 2011) because these events occurred in Brooklyn, New York and have nothing to do with the State of New Jersey.

8.      The affidavit of Fred Vallis, which includes selected portions of American General's file for the proposition that some of the documents bear a misspelled New Jersey address in Paterson, New Jersey, is proof of nothing since Mr. Vallis has no personal knowledge of anything, and his affidavit of February 28, 2011 was altered from the affidavit of February 2, 2011 to the amended affidavit of February 28, 2011 so as to delete a document which he wrongfully claimed showed a New Jersey address (see Exhibit B to Bernstein reply declaration) and to substitute a different document.

Mr. Vallis' affidavit also begs the question, as does plaintiff's entire house of cards, that some documents have a New Jersey address because as the declarations of Mr. Sontag and Mr. Bernstein make clear, these New Jersey addresses were written in by someone else *after* Mr. Sontag and Mr. Bernstein had signed the documents in question in Brooklyn, New York.

9.      The reference to the Trust VII document allegedly being notarized in New Jersey is likewise misleading. As Mr. Bernstein makes clear in his declaration of March 7, 2011 the trust document was never signed or notarized in New Jersey. It was signed by Mr. Bernstein in New York and someone fraudulently obtained a New Jersey notary signature which is undated and bears a New York acknowledgment form, because, in fact, Mr. Bernstein never appeared before this notary or any other notary in New Jersey.

10.     The argument that plaintiff unilaterally labeled its policy a New Jersey policy, which should have been an AIG US Life policy (Exhibit B to Sontag reply declaration) which came in an AIG folder and was never called to the defendant's attention is irrelevant at best. Calling a horse a cow does not make it one. New Jersey had nothing to do with anything in this case. Labeling it a New Jersey policy does not give the plaintiff any rights because of its bait and switch.

11.     Since the defendants have now paid insurance premiums for almost six years, the defendants are entitled to have the policies deemed incontestible by this Court. Mrs. Teller is now six years older and for the trustees to now obtain a policy of similar value upon Mrs. Teller would cost them far more six years later. If American General is permitted to rescind the policies, at the very least it should return all the premiums, plus legal interest.

12.     The Court should also be aware that counsel for the plaintiff is playing fast and loose with the courts; for example, in *American General v. Elman Savings Trust,* 080-05364-MLC, pending in this Court, they have alleged in ¶11 of its complaint that American General is authorized to sell insurance in New York. In the federal court in Texas, they have alleged that American General is authorized to sell insurance in New York because it apparently owns US

Life and misled a federal judge into so stating in his opinion (Exhibit D, page 8, to Sontag declaration of March 7, 2011).

In this case, the same lawyers admit that American General is _not_ authorized to sell insurance in the State of New York but claim that its sister company, US Life, is authorized (Exhibit H to Sontag reply declaration).

As will be shown, the law does not permit American General to use New Jersey as a forum for all of its complaints, to have its agents inject false New Jersey addresses into applications as a means of selling policies in New York, and that if this case is not dismissed, at the very least it should be transferred to the Eastern District of New York where everything occurred and where some of American General's agents have now been indicted (Exhibit C to Eilender declaration of March 7, 2011).

Nothing happened in New Jersey with respect to the policies in question. It should be noted that even the lawyers representing American General are from Texas and not New Jersey.

It will be clear that American General is forum-shopping by the bringing all of its actions – even those having nothing at all to do with the State of New Jersey – in this Court in New Jersey; *see, for example, American General v. Berger,* 10-0337 (WHW) where American General alleges that a document was purportedly executed in New Jersey as a means of trying to contrive jurisdiction.

## POINT I

### *A TRUST IS AN ENTITY AND CANNOT BE SUED;*
### *IT IS ONLY THE TRUSTEE THAT CAN BE SUED*

Both New York and New Jersey law have always recognized that trusts lack the capacity to be sued; *see, for example, Moran v. Joyce,* 125 NJL 558, 18 A.D.2d 708 (1941).

The trustee is the real party in interest with the power to sue or be sued; Fed.R.Civ.P. 17. *See also Navaro Savings Association v. Lee,* 446 U.S. 458, 100 S.Ct. 1778 (1980).

The trustees in our case are both citizens of New York and reside in Brooklyn, as is the insured Bluma Teller. According to the declarations of Mr. Sontag and Mr.  Bernstein, everything was signed in New York, and there is no evidence to the contrary. Their testimony is supported by David Weber, AIG's agent who delivered the policies to them in Brooklyn.

The trusts specifically state they are New York trusts governed by New York Law. For the last five years, American General has forwarded their premium bills to the trusts' addresses in New York. There is no basis for claiming the trusts have any connection with New Jersey other than the insertion of a false New Jersey address by someone *after* the defendant trustees had signed the American General forms.

## POINT II

### *PLAINTIFF HAS FAILED TO CARRY ITS BURDEN*
### *OF SHOWING THERE IS PERSONAL JURISDICTION*
### *OVER THE TRUSTS IN NEW JERSEY*

The plaintiff always has the burden of establishing that a court may exercise personal jurisdiction over the defendants and it "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule

12(b )(2) motion to dismiss . . . Once the motion is made, plaintiff must respond with actual proofs, not mere allegations" *Paterson* v. *Federal Bureau of Investigation,* 893 F.2d 595 (3d Cir 1990) (citations omitted).

The court in *Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287 (1996), made it clear that once a defendant has raised a jurisdictional defense, a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper. The plaintiff in this case has certainly failed to carry that burden or any other burden.

The plaintiff's burden involves meeting the standards for asserting personal jurisdiction established under the "Due Process" clause of the U.S., Constitution's Fourteenth Amendment.

It is well settled that, under the Due Process Clause, a court may exercise either "general jurisdiction" or "specific jurisdiction" over a defendant. "Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum." *Victory Int'l* v. *Perry Ellis Int'l.,* 2008 WL 65177, #4 (D.N.J. Jan. 2, 2008) (Civ No. 07-0375 (WHW), Walls, J.) (citations omitted).

In our case, it is clear that there is no general jurisdiction because the trust and trustees have nothing to do with the State of New Jersey. Even the plaintiff does not make that claim.

The affidavit by Mr. Vallis, which has been amended to delete a document which showed it was not signed in New Jersey as initially claimed, begs the question and provides no meaningful information whatsoever. All Mr. Vallis does – even if his affidavit were to be admissible, which we believe it is not[1] – is beg the question. No one is disputing at this point that

---

[1]      Mr. Vallis has no personal knowledge and therefore his affidavit has no value under Fed.R.Civ.P. 602. His identification of documents which he found in American General's file is likewise invalid under Fed.R.Civ.P. 901. It is obvious from comparing his original affidavit to his amended affidavit that he has no personal knowledge whatsoever, has mislabeled documents, and all he has done is simply select a few documents from the file which purportedly support American General's position that the insured Bluma Teller, her son Yehoshua Teller, and the trustees all trekked from New York to New Jersey to sign documents in Paterson, New Jersey, which is supported by nothing.

American General claims to have in its possession some handwritten pieces of paper where someone filled in, and misspelled Paterson in several different ways. There are declarations from each of the trustees, Mr. Sontag and Mr. Bernstein, that the New Jersey information was inserted onto the form *after* they had signed them.

American General has not come forward with an affidavit from anyone at all, including Simon Weinstock, the general agent who received commissions, Joel Epstein, AIG's agent (Exhibit D to Eilender declaration of March 7, 2011); Bluma Teller, the insured; or anyone else, supporting the claim that the trustees and the insured all traveled to New Jersey from their respective homes in Brooklyn, New York, in order to sign insurance forms, and then went back to Brooklyn, New York.

David Weber, AIG's agent, admits he delivered these policies to Mr. Sontag and to Mr. Bernstein in Brooklyn. In light of this the plaintiff must come forward with some real proof rather than the meaningless affidavit of Mr. Vallis which states nothing except that there are pieces of paper, not properly authenticated, which have the words New Jersey on them, with the word "Paterson" misspelled in several different ways, and which Mr. Sontag and Mr. Bernstein deny were on the forms when they signed them.

The complaint's half-hearted statements to the effect that allegedly false application papers were "*purportedly* executed" in New Jersey by the Trust and the other defendants more closely resemble speculative suggestions than allegations, and could not begin to satisfy Plaintiff's burden in establishing personal jurisdiction. *Cf Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n,* 846 F. Supp. 374, 378, 390 (B.D. Pa. 1994).

Significantly, American General admits it is a Texas company and does not even argue that it received documents in New Jersey or that it met with anyone in New Jersey or communicated with the trustees in New Jersey.

The complaint makes clear that no transaction occurred in New Jersey and that if plaintiff was somehow defrauded, it was defrauded in Texas (or perhaps Brooklyn), but not New Jersey.

Plaintiff's claim that a "New Jersey Policy" was issued to the trust is a red herring and of no consequence either. First, there can be no dispute that that label is *not* the equivalent of a choice-of-forum or choice-of-law clause. The policy has no such clauses.

Notably, plaintiff does not (and cannot) allege that this contract was negotiated, performed, or contemplated to be performed, by it or the trust in New Jersey. Indeed, under New Jersey choice-of-law principles, the governing law of this type of contract would *not* be New Jersey.[2] Accordingly, because plaintiff did not issue the policy to a New Jersey resident in New Jersey, and this contract is not governed by New Jersey law, the fact that Plaintiff unilaterally chose to (incorrectly) label it a "New Jersey Policy" is irrelevant for personal-jurisdiction purposes.

In short, there is no connection at all with New Jersey.

---

[2]    The Policy is indisputably a contract between parties from different states - none of whom are New Jersey residents - which was **not** negotiated or performed in New Jersey and (like the application that preceded it) lacks a choice-of-law clause. Under New Jersey choice-of-law principles, New Jersey law would not govern this contract. "New Jersey follows the *Restatement (Second) of Conflicts* (1971) in respect of insurance-contract choice of law disputes." *Harrows Stores, Inc.* v. *Hanover Ins. Co.*, 315 N.J. Super. 547, 552, 719 A.2d 196, 199 (App. Div. 1998) (citations omitted). Section 192 of that treatise addresses life insurance contracts and states that the rights under such a contract are determined by the local law of the insured's domicile "in the absence of an effective choice of law by the insured in his application . . . unless, with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties . . ." Accordingly, the law of New York which has a significant relationship - i.e., the state where the trustee was located and performed under the contract or where the Trust was formed, which in either case is not alleged to be New Jersey would govern this contract.

The law is also clear that in order for there to be jurisdiction over a defendant in the State of New Jersey, the defendant must have taken action which was deliberately directed towards the forum state. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Dept. 2002).

The plaintiff cannot create jurisdiction over the defendants simply because its agents – and certainly someone other than the defendants – injected the words New Jersey on some of the forms *after* they were signed by the defendants.

### POINT III

### THE ARGUMENT BY PLAINTIFF THAT DEFENDANTS ARE BOUND BY THE WORDS NEW JERSEY IN VARIOUS DOCUMENTS IS FRIVOLOUS

Plaintiff cites *Silverstri v. S. Orange Storage Corporation,* 14 N.J. Super. 205, 212, 81 A.2d 502, 505 (N.J. Super.Ct. App. Div.(1951) for the proposition that persons are conclusively presumed to have read documents. This case is totally inapposite and has nothing to do with our case.

The defendants in our case do not claim they did not read the documents. What they clearly claim in their declarations is that after they read and signed the documents, someone fraudulently added the words Paterson, New Jersey to the documents which were signed in New York.

The very *Silvestri* case relied upon by the plaintiff makes it clear that plaintiff's position is untenable, stating:

> . . . affixing a signature to a contract creates a conclusive presumption, <u>except as against fraud</u>, that the signer read, understood , and assented to its terms (emphasis added).

11

In our case, that is precisely what the defendants allege occur. After and only after the defendants had read and signed documents did someone wrongfully add the words Paterson, New Jersey, which were not there when the defendants signed the documents. because the documents were actually signed in Brooklyn, New York.

A signatory of a document does not have to cross out every blank space or black out every space on a document, or put "X"es in every space in a document which has not been filled out, in contemplation that someone might fraudulently inject a false statement as to where the document was signed. That is not the way the world works and that is not what the law requires. It is not claimed that the defendants did not read the documents, but that they were altered after they were signed by the defendants, as should be clear from the misspelling of Paterson.

### POINT IV

### IF THIS CASE IS NOT DISMISSED FOR LACK OF PERSONAL JURISDICTION IN THE STATE OF NEW JERSEY, AS IT SHOULD BE, VENUE SHOULD BE TRANSFERRED TO THE UNITED STATES DISTRICT FOR THE EASTERN DISTRICT OF NEW YORK

In reviewing the declarations of Mr. Sontag and Mr. Bernstein, and the documents attached thereto, as well as the affidavit of David Weber and declaration of Marc Fein, the lawyer who created the trust, it is clear that everything occurred in the State of New York, and New Jersey has *nothing* to do with this case.

There are no witnesses in the State of New Jersey. In fact, plaintiff recently issued fifteen subpoenas (Exhibit E to Eilender declaration of March 7, 2011), and thirteen of those subpoenas were issued in New York, and two in states other than New Jersey. Not a single

subpoena was issued for a witness in New Jersey, because there are no witnesses in New Jersey.

Significantly, in opposing the request for change of venue, plaintiff has not referred the Court to a single witness who is in the State of New Jersey.

The argument by the plaintiff that it is somehow not inconvenient for some fifteen or more witnesses from New York to travel to New Jersey because New Jersey is an adjacent state is frivolous. New Jersey is adjacent to New York and this Texas law firm, who is not from New Jersey, would have no great problem in representing the same plaintiff in New York if they chose to do so.

American General is not located in New Jersey, none of the defendants are located in New Jersey, and there are no witnesses in New Jersey. The only thing in the State of New Jersey is a fabricated address for the trusts created by someone other than the defendants.

This case should not burden the New Jersey courts and although the argument is that New Jersey could apply New York law, one must agree that the New York courts are far more familiar with New York Law than the New Jersey courts.

If the court does not outrightly dismiss the action or transfer venue, at the very least defendants should be given an opportunity to conduct discovery and take the depositions under oath of Bluma Teller, Joel Epstein, Simon Weinstock and anyone else who might have knowledge as to who put the New Jersey address on some forms after they were signed by the defendants in Brooklyn, New York.

Throughout its papers, plaintiff fails to come up with one rational reason why an eighty year old woman who was the insured, Bluma Teller, or the trustees, who live and work in Brooklyn, would contrive a New Jersey address for the trust.

### POINT V

### SANCTIONS SHOULD BE IMPOSED UPON COUNSEL
### FOR AMERICAN GENERAL PURSUANT TO 28 U.S.C. 1927

Despite a twenty-page memorandum opposing the motion to dismiss or change venue, plaintiff's attorneys have failed to designate a single witness located in New Jersey, a single witness contesting that everything occurred in Brooklyn, New York and that someone injected the words Paterson, New Jersey, spelled multiple ways on to the forms attached to Mr. Vallis' affidavit *after* the documents were signed by the defendants.

There is no good faith basis for this action to have been brought in the State of New Jersey except crude forum-shopping by American General, and after being requested to voluntarily transfer to the Eastern District of New York counsel refused to do so, burdening defense counsel and this Court with needless motion practice. It is precisely this type of practice that 28 U.S.C. 1927 was intended to prevent lawyers from taking untenable and unreasonable positions.

### *CONCLUSION*

The defendants' motion should be granted in all respects; this action should be dismissed

for lack of personal jurisdiction and if it is not dismissed, then it should be transferred to the

United States Court for the Eastern District of New York with costs and attorneys' fees imposed

upon plaintiff's counsel pursuant to 28 U.S.C. 1927.

Dated: New York, New York
      March 7, 2011

                  Respectfully submitted,

                  ELIZABETH EILENDER, ESQ.
                  Attorneys for Defendants
                  225 Broadway, 24th Floor
                  New York, New York 10007
                  (212) 227-2174

                  By: _____
                        *Elizabeth Eilender*