Elizabeth Eilender, Esq.
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174
*Attorney for the Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------------------x

AMERICAN GENERAL LIFE INSURANCE COMPANY,

                           Plaintiff ,

    -against-

TELLER FAMILY IRREVOCABLE TRUST VI,
by and through its trustee, GERSON SONTAG a/k/a
GERSHON SONTAG, and TELLER FAMILY
IRREVOCABLE TRUST VII, by and through its trustee,
BEZALEL BERNSTEIN a/k/a BTALEL BERNSTEIN,

                           Defendants.

-----------------------------------------------------------------------x

Case No.
2:10-CV-05604-SDW-MCA

**Motion Returnable
June 6, 2011**

## MEMORANDUM OF LAW
## IN OPPOSITION TO AMERICAN GENERAL'S MOTION FOR RULE 11 SANCTIONS

LAW OFFICE OF
ELIZABETH EILENDER, ESQ.
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................. ii

Statement of Facts ..................................................................................... 1

American General's Motion for Rule 11 Sanctions .................................. 7

Argument .................................................................................................... 9

American General has not Identified any False Statement ..................... 10

American General has not Presented any Evidence of an Improper Purpose ... 12

American General has Failed to Allege a Material Misstatement ........... 13

The Alleged Misstatement is Clearly a Simple Inadvertent Minor Misstatement ... 14

American General Failed to Serve this Motion 21 Days Prior to Filing ... 15

No Opportunity was Given to Correct the Alleged Misstatements ......... 18

Conclusion ............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

**CASES**

*Bensalem Township v. International Surplus Lines Insurance,* 38 F.3d 1303
(3d Cir. 1994)..................................................................................................14, 15

*Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191 (3d
Cir. 1988)..........................................................................................................8

*Express America v. TAMKO Asphalt Products,* 132 B.R. 542 (W.D. Pa.
1991)..................................................................................................................20

*Ford Motor Company v. Summit Motor Products,* 930 F.2d 277 (3d Cir.
1991)..................................................................................................................8

*Gaiardo v. Ethyl,* 835 F.2d 479 (3d Cir. 1987)....................................14, 15, 20

*Golden Eagle Distributing v. Burroughs,* 801 F.2d 1531 (9th Cir. 1986).............13, 14

*Goodman v. Goodman,* 2007 U.S. Dist. LEXIS 16010 (D.N.J.) ................8, 9

*Graco v. PMC Global,* 2011 U.S. Dist. LEXIS 24252 (D.N.J.)......................15

*Hendrickson v. E.P.C. Real Estate Equities,* 1991 U.S. Dist. LEXIS 8341
(D.N.J.) ..............................................................................................................8

*In re Jazz Photo,* 312 B.R. 524 (D.N.J. 2004) ...............................................16

*Morristown Daily Record v. Graphic Communication Union,* 832 F.2d 31
(3rd Cir. 1987) ..................................................................................................15

*Oritz v. Automotive Rentals,* 2010 U.S. Dist. LEXIS 82590 (D.N.J.) ....................17, 18

*P.J. Noyes v. Bio-Serv,* 1988 U.S. Dist. LEXIS 9240 (D.N.J.).......................20

*Pensiero v. Lingle,* 847 F.2d 90 (3d Cir. 1988) ........................................8, 9, 13

*Philadelphia Gear v. Swath,* 200 F. Supp. 2d 493 (E.D. Pa. 2002)............................8, 9

*Reath v. Reath,* 2006 Bankr. LEXIS 4477 (D.N.J.) .......................................17

*Rosenberg v. JCA,* 2007 U.S. Dist LEXIS 23570 (D.N.J.)............................12

*Schmude v. Sheahan,* 420 F.3d 645 (7th Cir. 2005) ......................................11

*Simmerman v. Corino,* 27 F.3d 58 (3d Cir. 1994) ...............................................8, 18, 19

*Simon Debartolo Group v. The Richard E. Jacobs Group,* 186 F.3d 157 (2d Cir. 1999)........................................................................................................13

*United States v. Maxwell,* 2010 U.S. Dist. LEXIS 21033 (D. Colorado) ........................8

*Wild Game NG v. Wong's International,* 329 Fed. Appx. 131 (9th Cir. 2009)............16

*Woods v. Truckee Meadows Water Authority,* 2007 U.S. Dist. LEXIS 58291 (D. Nevada)..............................................................................................................16

*Zhou v. Pittsburg State University,* 252 F. Supp. 2d 1194 (D. Kansas 2003) ...........8, 9

*Zion v. Nassan,* 727 F. Supp. 2d 388 (W.D. Pa. 2010)................................................12

## STATUTES

Fed. R. Civ. P. 11 ................................................................7, 15, 17, 19, 20, 21

Fed. R. Civ. P. 11(b) ...........................................................................7, 14, 15

Fed. R. Civ. P. 11(b)(1) .......................................................................9, 12, 13

Fed. R. Civ. P. 11(b)(2) ................................................................................13

Fed. R. Civ. P. 11(b)(3) ............................................................................9, 12

Fed. R. Civ. P. 11(c) ...................................................................................7, 15

Fed. R. Civ. P. 11(c)(2) ...............................................................16, 17, 18, 19, 20

Fed. R. Civ. P. 11(c)(5)(A) ............................................................................12

N.J.S.A. § 17:33A-7.........................................................................................4

N.Y. Ins. Law § 3203 .....................................................................................3

Texas Disciplinary Rules of Professional Conduct, Rule 3.03 ............................6, 10

Defendant Gershon Sontag ("Sontag") and his counsel, Elizabeth Eilender ("Eilender"), submit this memorandum of law in opposition to plaintiff American General Life Insurance Company's ("American General") motion for Rule 11 sanctions.

## I.    STATEMENT OF FACTS

Sontag is a New York resident and serves as trustee for The Teller Family Irrevocable Trust VI, a New York Trust ("Trust VI"). Bezalel Bernstein ("Bernstein") is also a New York resident and serves as trustee for The Teller Family Irrevocable Trust VII ("Trust VII").

American International Group ("AIG") is the parent company of numerous life insurance issuing subsidiaries, including American General. American General is not licensed to do business in New York. AIG is required to issue New York life insurance policies through another subsidiary, The United States Life Insurance Company ("US Life"). Ex. A to Declaration of Elizabeth Eilender in Opposition to American General's Motion for Rule 11 Sanctions ("Eilender Declaration"). Applications to US Life and applications to American General are made using the same standard AIG application form. Ex. B to Eilender Declaration.

In 2005, an AIG representative/agent — David Weber — arranged for Trust VI to obtain an AIG policy insuring the life of Bluma Teller ("the Teller policy"). Ex. C to Eilender Declaration. The same AIG representative/agent arranged for Trust VII to obtain a Teller policy as well. The policies were to be issued by AIG's New York subsidiary, US Life. As payment of the first month's premium for Trust VI, Sontag remitted to AIG a check for $106,138 setting forth "AIG US Life" as payee. Ex. D to Eilender Declaration.

Sometime thereafter, AIG delivered the Teller policy to Sontag in an AIG folder. Sontag is neither an attorney nor an insurance professional. Having taken delivery of an AIG policy, the appearance of the name "American General" within the policy was insignificant to Sontag. As a

layperson, Sontag had no idea that American General is prohibited from issuing New York life insurance policies.

In 2010, Sontag learned that upon the death of an insured, some life insurance companies had been attempting to claim denial of coverage. Sontag's counsel sent a letter to American General requesting confirmation that if the Trust continued to pay the premiums, then the Teller policy would be paid pursuant to its terms and that American General knew of no defense to the policy. In a letter dated September 28, 2010, American General refused to provide a definitive response. Ex. E to Eilender Declaration.

Less than thirty days later — in a race to the courthouse and to avoid an action in New York — American General commenced this action in the United States District Court for the District of New Jersey, wherein American General seeks rescission of the Teller policies issued to Trust VI & Trust VII. The Trusts, their trustees and their beneficiaries are all New York residents. The insured, Bluma Teller, is a New York resident. The policies were solicited and delivered in New York. Ex. C to Eilender Declaration.

The Teller policies have absolutely no connection to New Jersey. As such, Sontag and the other defendants have moved to dismiss this action for lack of personal jurisdiction, or in the alternative, to have this action transferred to the Eastern District of New York on improper venue and *forum-non-conveniens* grounds.

In response, American General points to the Teller life insurance applications, wherein the Trusts are alleged to have New Jersey addresses. In connection with defendants' reply to their motion to dismiss, the Sontag and Bernstein declarations set forth that the Trusts have nothing to do with New Jersey and that the same New Jersey address was written into the applications after they had been signed and returned to the AIG agents. In addition, Sontag and

Bernstein declare that they have never before heard of the purported Paterson New Jersey address. Ex. F & G to Eilender Declaration.

The respective trustees, Sontag and Bernstein, did not know of each other at the time their respective applications were made. Amazingly, the New Jersey addresses inserted into the Teller life insurance applications are precisely the same. Moreover, the purported New Jersey addresses are misspelled throughout both Trusts' applications in a variety of ways. Surely a person may be presumed to know the spelling of his own address.

It is thus obvious that the New Jersey addresses were fraudulently inserted into the Teller applications by AIG, or one of its respective agents. Upon further investigation, counsel for defendants has uncovered numerous cases similar to that of defendants'. Despite being prohibited from selling life insurance policies in New York, American General regularly issues policies on the lives of elderly New York residents by inserting contrived New Jersey addresses for the policy holders, usually trusts.

The reasons for such scheme are many. Although they are subsidiaries of AIG, American General and US Life maintain separate balance sheets and therefore have an incentive to compete for each other's business. Ex. H to Eilender Declaration. American General sought to reap profits in the lucrative New York life insurance market despite its lack of licensure.

In addition, life insurers enjoy greater protections under New Jersey law than under New York law. For example, in both states, once a life insurance policy has been in force for two years, such policy is incontestable. Under New York law, such incontestability is absolute. N.Y. Ins. Law § 3203. Under New Jersey law however, an insurer may always assert fraud as a defense to coverage. Furthermore, rescinding a life insurance policy renders a New York insurer liable for repayment of received premiums. New Jersey law requires repayment only after all

3

commissions, legal fees and other associated costs have been settled.  *See* N.J.S.A. § 17:33A-7.
New Jersey policies are thus more lucrative to AIG than New York policies.  AIG agents also
earn larger commissions by selling New Jersey (American General) policies rather than New
York (US Life) policies.

      For these reasons and others, AIG/American General has engaged in a fraudulent scheme
of illegally selling insurance upon the lives of elderly New York residents.  The premiums
associated with such insurance policies are so costly that a substantial percentage of such policies
lapse prior to the insureds' deaths.  With respect to such policies, AIG/American General and its
agents receive a windfall by collecting massive premium payments and/or commissions; because
the policies ultimately lapse, the insureds' deaths are not covered and AIG has limited risk.

      With respect to the policies which do not lapse, American General frequently denies
coverage.  American General asserts that those policies were issued in, and governed by, New
Jersey law.  American General then proceeds to claim in connection with the policies some
misrepresentations — which it maintains are material — and brings actions for rescission in the
United States District Court for the District of New Jersey.  Without the contrived New Jersey
addresses, New York law would render these policies absolutely incontestable and American
General's scheme would fall apart.

      In opposing defendants' motion to dismiss, American General has set forth that because it
is unlicensed to sell life insurance in New York, it would never have done so.  American General
further urges that because US Life is its "sister company", American General has no motive to
engage in the fraudulent scheme set forth by defendants.  However and as just explained,
AIG/American General did in fact as a pattern illegally sell New York life insurance policies.

Moreover, American General had strong motives for doing so notwithstanding the existence of US Life.

In response to American General's claim that it had no motive to sell life insurance in New York, Sontag's declaration elaborates upon American General's fraudulent scheme and motive to issue New York life insurance policies. The Sontag declaration recounts a case brought in The United States District Court for the Southern District of Texas entitled *American General Life Insurance Company v. Kirsh,* Civil Action No. H-07-3696 ("*Kirsh*"). American General issued New York life insurance policies despite being unauthorized to do so. Kirsh acted as American General's agent in connection with the sale of such policies. When the illegal policies were terminated, American General sought to recoup the commissions paid to Kirsh. In connection with his various defenses, Kirsh asserted that American General was not licensed to issue New York life insurance policies in the first instance.

In its reply in support of its motion for summary judgment against Kirsh, American General's attorneys — David T. McDowell and the firm he was with at the time, Bracewell & Guiliani LLP — requested that "the Court take Judicial Notice of the fact that it owns…US Life." Ex. I to Eilender Declaration. In granting summary judgment in favor of American General, Judge Hoyt took judicial notice of US Life and stated that "American General directs this Court to evidence showing that it owns United States Life Insurance Company…***and thus is licensed to do business in New York.***" (emphasis added). Judge Hoyt thus held that American General was not precluded from issuing life insurance policies in New York and granted summary judgment to American General. Ex. J to Eilender Declaration.

American General's attorneys failed to apprise the court of its error which was caused by American General's attorneys. Kirsh then moved for reconsideration of the summary judgment

5

decision.  Kirsh again pointed to the fact that American General was absolutely unauthorized to issue life insurance policies in New York.  Ex. K to Eilender Declaration.  Despite having a clear second chance to correct Judge Hoyt's blatant error, American General and its attorneys failed to do so, thereby continuing to violate the Texas Disciplinary Rules of Professional Conduct, Rule 3.03:  Candor Toward the Tribunal.[1]  *See* Declaration of Charles Herring dated May 18, 2011 and Declaration of Frederick Moss dated May 18, 2011 ("Herring and Moss Declarations"), Ex. L & M to Eilender Declaration.

American General's attorneys — who then included Edison, McDowell & Hetherington LLP, David T. McDowell and Jessica L. Wilson — submitted a response in opposition to Kirsh's motion.  Ex. N to Eilender Declaration.  With respect to American General's authority to issue life insurance policies in New York, American General's response set forth that such issue was already discussed by the court in its prior decision granting summary judgment and that the court "ultimately rejects Kirsh's argument that American General was legally barred from issuing policies" in New York.  American General's attorneys proceeded to conclude that "Kirsh has presented no issues of clear error, no changes in controlling law...nor any highly unusual circumstances that would require the Court to disturb its prior decision."

American General's attorneys — the same attorneys who represented American General in *Kirsh* and opposed Kirsh's motion for reconsideration — now admit that American General is not licensed to issue New York policies.

---

[1] Such rule provides:
(a) A lawyer shall not knowingly:
   (1) make a false statement of material fact or law to a tribunal;
   (2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act; [or]...
   (4) fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

## II.   AMERICAN GENERAL'S MOTION FOR RULE 11 SANCTIONS

During the pendency of defendants' motion to dismiss, which is still pending, American General has now moved for sanctions against Sontag, Eilender and her law firm pursuant to Fed. R. Civ. P. 11.  American General contends that the Sontag declaration violates Rule 11 by recounting how American General misled the *Kirsh* court.  However and as just explained, American General did in fact mislead the *Kirsh* court into believing that American General is authorized to sell New York life insurance policies.  As will be demonstrated, American General's motion is also inappropriate on numerous other substantive and procedural grounds. Indeed, American General's Rule 11 motion may itself be sanctionable under Rule 11.

Fed. R. Civ. P. 11(b) provides that by presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Subject to various statutory and judicial guidelines, Fed. R. Civ. P. 11(c) provides that a violation of Rule 11(b) may justify imposition of sanctions upon the violator.  However, conduct is not sanctionable under Rule 11(c) unless the court finds that such conduct in fact violated Rule 11(b).  Although the plain language of Rule 11(b) may appear to be broad and reach any

statement lacking legal or factual support, courts within the Third Circuit have consistently restricted the scope of Rule 11.

Rule 11 is thus limited to instances where application of the Rule is consistent with the Rule's purpose — deterrence of litigation abuse and misuse. *Simmerman v. Corino,* 27 F.3d 58 (3d Cir. 1994); *Pensiero v. Lingle,* 847 F.2d 90 (3d Cir. 1988). Imposition of Rule 11 sanctions is also subject to a stringent standard, because such sanctions "(1) are in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes…(2) tend to spawn satellite litigation counter-productive to efficient disposition of cases…(3) increase tensions among the litigating bar and between the bench and the bar." *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191 (3d Cir. 1988); *Hendrickson v. E.P.C. Real Estate Equities,* 1991 U.S. Dist. LEXIS 8341 (D.N.J.). As such, Rule 11 is limited to the ***exceptional circumstance*** where a pleading is patently frivolous and it is patently clear that the claim has ***absolutely no chance of success.*** *Doering,* 857 F.2d at 194; *Ford Motor Company v. Summit Motor Products,* 930 F.2d 277 (3d Cir. 1991). Even where a pleading is supported by nothing more than a reasonable suspicion, such pleading does not implicate Rule 11. *Pensiero,* 847 F.2d at 95.

In addition, "Rule 11 neither penalizes overstatements nor authorizes an overly literal reading of every factual statement…The Rule is satisfied if the substance of the court filing is well-grounded in fact and law". *United States v. Maxwell,* 2010 U.S. Dist. LEXIS 21033 (D. Colorado); *Zhou v. Pittsburg State University*, 252 F. Supp. 2d 1194 (D. Kansas 2003). As such, inconsequential and immaterial misstatements in a pleading are not sanctionable under Rule 11. *Id.* Similarly, simple mistakes and errors in a pleading do not implicate Rule 11. *Goodman v. Goodman,* 2007 U.S. Dist. LEXIS 16010 (D.N.J.); *Philadelphia Gear v. Swath,* 200 F. Supp. 2d

493 (E.D. Pa. 2002). Where a misstatement causes no prejudice to another party, an imposition of sanctions is questionable and is generally unwarranted absent additional wrongful conduct. *Id.*; *Zhou*, 252 F. Supp. 2d at 1206.

Where a pleading setting forth clearly non-sanctionable claims also sets forth claims allegedly violative of Rule 11, Rule 11 is inapplicable unless the attacked claims ***so burden the litigation process*** that the pleading as a whole constitutes an abusive pleading. *Pensiero*, 847 F.2d at 97.

In assessing whether a pleading falls within such limited scope, an attorney's conduct is to be judged only with respect to the time during which the pleading was filed. A reviewing court must apply an objective standard of reasonableness under the circumstances; as such circumstances existed at the time the pleading was filed. *Id.*

American General contends that the Sontag declaration violates Rule 11(b)(1) and (3). In purported support of its motion, American General sets forth that "nowhere in the *Kirsh* case did American General represent that it is licensed to do business in New York…Furthermore, the reply was not signed or filed by Ms. [Jessica] Wilson…Wilson worked at a completely different law firm at the time the reply was filed." Memorandum in Support at pp. 6-7.

### III.   ARGUMENT

American General thus appears to base its Rule 11 motion upon two grounds. In support of its motion pursuant to Rule 11(b)(3), American General attacks the Sontag declaration by misstating such declaration's language. According to American General, "Sontag accuses Ms. [Jessica] Wilson…of misleading the Southern District of Texas by claiming American General was licensed to do business in New York." American General attacks such fabricated statement

as false because "nowhere in the *Kirsh* case did American General represent that it is licensed to do business in New York." *Id.*

### A.      American General Has Not Identified Any False Statement

However, Sontag never accused American General and its attorneys of actually *claiming* that American General is licensed in New York. Contrary to American General's fabrication, the Sontag declaration merely sets forth that "Jessica Wilson *misled* the Texas court into believing that American General was licensed to sell insurance policies in New York." Sontag declaration at ¶ 17, Ex. F to Eilender Declaration. This statement is entirely accurate.

As stated above, Jessica Wilson submitted a response to Kirsh's motion for reconsideration of Judge Hoyt's summary judgment decision. Such response failed to point out the Texas court's error in finding American General to be licensed in New York. Rather, the response set forth that "the Court carefully considered Kirsh's ultimate point — that…American General was not licensed to issue policies of insurance in New York…and ultimately rejects Kirsh's argument that American General was legally barred from issuing [New York] policies…Kirsh has presented no issues of clear error…nor any highly unusual circumstances that would require the Court to disturb its prior decision."

In granting summary judgment in favor of American General, the *Kirsh* court erroneously held that American General is licensed to sell New York life insurance policies. Pursuant to the Texas Disciplinary Rules of Professional Conduct, Rule 3.03:  Candor Toward the Tribunal, American General's attorneys were obligated to apprise the court of its clear error which was known to American General's attorneys. *See Supra,* n. 1. Their failure to do so, both during the time period between the summary judgment decision and Kirsh's reconsideration motion, and in

response to Kirsh's subsequent motion, misled the court regarding American General's licensure. *Schmude v. Sheahan,* 420 F.3d 645 (7th Cir. 2005).

In fact, Jessica Wilson's affirmative statement that in connection with American General's licensure, "Kirsh has presented no issues of clear error…nor any highly unusual circumstances that would require the Court to disturb its prior decision", is intended to perpetuate and take advantage of the court's clear error, specifically, Judge Hoyt's holding that American General is licensed to sell New York life insurance policies. Such a clear error on the part of Judge Hoyt is obviously a highly unusual circumstance.

Accordingly, even if American General's claim that "Sontag accuses Ms. [Jessica] Wilson…of misleading the Southern District of Texas by claiming American General was licensed to do business in New York" occurred (and it is theoretically undisputed that it did not), Rule 11 would still be inapplicable. Subsequent to Judge Hoyt's holding that American General is licensed in New York and Kirsh's vigorous attempt to demonstrate otherwise, Jessica Wilson clearly stated that "Kirsh has presented no issues of clear error" in connection with American General's New York licensure.

The Sontag declaration is thus entirely accurate in setting forth that Jessica Wilson intended to mislead the Texas court into believing that American General is licensed to sell New York life insurance policies. Therefore, such accusation against Jessica Wilson cannot implicate Rule 11.

American General's assertion, that "the reply [in support of American General's motion for summary judgment] was not signed or filed by Ms. [Jessica] Wilson", is entirely irrelevant to this Rule 11 motion. Jessica Wilson misled Judge Hoyt subsequent to his summary judgment decision. Upon being retained by American General and learning of Judge Hoyt's error, Jessica

11

Wilson misled the Texas court by failing to point out such error, in violation of the Texas Disciplinary Rules. In response to Kirsh's motion for reconsideration, Jessica Wilson further misled the court. Her response set forth that with respect to Judge Hoyt's decision on American General's licensure, Kirsh failed to present an issue of clear error. However, Kirsh's motion for reconsideration indeed pointed out the court's clear error in holding that American General is licensed to sell New York life insurance policies. *See* Herring and Moss Declarations, Ex. L & M to Eilender Declaration.

Because American General has failed to identify any statement not supported by fact, its Rule 11(b)(3) motion for sanctions is baseless and should be denied.

**B.**     **American General Has Not Presented Any Evidence Of An Improper Purpose**

With respect to American General's motion for sanctions pursuant to Rule 11(b)(1), no evidence of an improper purpose has been presented. The only statement set forth in purported support of such motion is that "the fact that such a serious allegation was lodged against an...attorney...in a public forum only supports that the allegation was made for improper purposes." Such statement is truly unintelligible. American General cites no authority for its absurd proposition that any pleading containing a "serious allegation" against an attorney is per-se sanctionable.

To the extent that American General presumes an improper purpose from the alleged lack of factual support, such presumption is legally baseless. The courts in this circuit have made it clear that a Rule 11(b)(1) motion must be supported by evidence of an improper purpose. *Zion v. Nassan*, 727 F. Supp. 2d 388 (W.D. Pa. 2010); *Rosenberg v. JCA,* 2007 U.S. Dist LEXIS 23570 (D.N.J.). Indeed, if an improper purpose could be presumed whenever a statement lacks factual or legal support, Rule 11(c)(5)(A) would be rendered meaningless. Under such rule, monetary

sanctions cannot be imposed upon a represented party for violating Rule 11(b)(2) — (legally baseless pleadings).  However, if an improper purpose can be presumed solely as a result of a pleading's baselessness, monetary sanctions could then be imposed upon a represented party for violating Rule 11(b)(1) — (improper purpose).  *Simon Debartolo Group v. The Richard E. Jacobs Group*, 186 F.3d 157 (2d Cir. 1999).

Because American General has failed to present any evidence that the Sontag declaration was filed for an improper purpose, its Rule 11(b)(1) motion for sanctions is baseless and should be denied.

### C.    American General Has Failed To Allege A Material Misstatement

Even if the Sontag declaration is read as accusing Jessica Wilson of misleading the Texas court based upon American General's reply in support of its motion for summary judgment, Rule 11 would still be inapplicable.  American General's counsel's conduct in the *Kirsh* case has been presented to this Court to support defendants' claim that American General is engaged in a fraudulent scheme to illegally sell New York life insurance policies.

In such context, whether Jessica Wilson was in fact the attorney who initially misled the *Kirsh* court is inconsequential and wholly immaterial to defendants' motion to dismiss. Similarly, whether the *Kirsh* court was misled via American General's reply or via a subsequent response to a reconsideration motion is inconsequential and immaterial to defendants' motion.

As such, even if the Sontag declaration contains the misstatements alleged by American General, such alleged misstatements would have no bearing upon the substance of the declaration — that the Teller policies have absolutely no connection to New Jersey.  The purpose of Rule 11 is to deter the filing of frivolous pleadings.  Accordingly, Rule 11 is applicable only where a pleading *as a whole* violates Rule 11(b).  *Pensiero*, 847 F.2d at 97; *See also Golden*

13

*Eagle Distributing v. Burroughs*, 801 F.2d 1531 (9th Cir. 1986).   American General has not demonstrated how any pleading filed by defendants — as opposed to discrete statements within a pleading — violates Rule 11(b).   *See Supra,* pp. 7-9.   Therefore American General's Rule 11 motion should be denied in its entirety.

**D.**   **The Alleged Misstatement Is Clearly A Simple Inadvertent Minor Misstatement**

In addition and as explained above, Rule 11 is applicable only where application of the Rule would be consistent with its purpose — deterrence of litigation abuse and misuse.   *See Supra,* p. 8; *See also Gaiardo v. Ethyl,* 835 F.2d 479 (3d Cir. 1987).   American General's Rule 11 motion is based upon an alleged misstatement in the Sontag declaration regarding the misleading pleading filed in *Kirsh.*   American General's response — by Jessica Wilson — to Kirsh's motion for reconsideration of Judge Hoyt's summary judgment decision, was misleading.   American General contends that the Sontag declaration identifies American General's reply in support of summary judgment as the misleading pleading.   Even if the Sontag declaration indeed contained such misstatement, such misstatement would have obviously been the result of a simple non-prejudicial minor inadvertent misstatement by referring to the reply instead of Jessica Wilson's response to the reconsideration motion.   Imposition of Rule 11 sanctions in such a case would not be at all consistent with the Rule's purpose of deterring abuse. A non-prejudicial mistake is axiomatically not an abuse of the litigation process and sanctions are not necessary to deter simple mistakes.

The Third Circuit has consistently held that "Rule 11 sanctions may be awarded in ***exceptional circumstances*** in order to discourage…baseless actions or…frivolous motions…***Rule 11 is not to be used routinely*** when the parties disagree about the correct resolution of a matter." *Bensalem Township v. International Surplus Lines Insurance,* 38 F.3d

14

1303 (3d Cir. 1994); *Morristown Daily Record v. Graphic Communication Union,* 832 F.2d 31

(3rd Cir. 1987); *Graco v. PMC Global,* 2011 U.S. Dist. LEXIS 24252 (D.N.J.).  ***"When issues***

***are close, the invocation of Rule 11 borders on the abusive."***  *Gaiardo,* 835 F.2d at 483-484;

*See also Morristown,* 832 F.2d at 32

As such, even if American General's contentions were believed, application of Rule 11 in

this case would not be consistent with the Rule's purpose.   Therefore, the Sontag declaration's

alleged misstatements do not implicate Rule 11.   Accordingly, American General's Rule 11

motion should be denied.

**E.    <u>American General Failed To Serve This Motion 21 Days Prior To Filing</u>**

Even if American General had indeed set forth an otherwise valid basis for its Rule 11

motion, such motion would still fail on procedural grounds.  Fed. R. Civ. P. 11(c) establishes

certain procedures which must be followed in the event sanctions for violations of Rule 11(b) are

to be imposed:

> (1) *In General.*  If, after notice and a reasonable opportunity to respond, the court
> determines that Rule 11(b) has been violated, the court may impose an appropriate
> sanction on any attorney, law firm, or party that violated the rule or is responsible for the
> violation.  Absent exceptional circumstances, a law firm must be held jointly responsible
> for a violation committed by its partner, associate, or employee.
> (2) *Motion for Sanctions.*  A motion for sanctions must be made separately from any
> other motion and must describe the specific conduct that allegedly violates Rule 11(b).
> The motion must be served under Rule 5, but it must not be filed or be presented to the
> court if the challenged paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within another time the court sets.
> If warranted, the court may award to the prevailing party the reasonable expenses,
> including attorney's fees, incurred for the motion.
> (3) *On the Court's Initiative.*  On its own, the court may order an attorney, law firm, or
> party to show cause why conduct specifically described in the order has not violated Rule
> 11(b).
> (4) *Nature of a Sanction.*  A sanction imposed under this rule must be limited to what
> suffices to deter repetition of the conduct or comparable conduct by others similarly
> situated.  The sanction may include nonmonetary directives; an order to pay a penalty
> into court; or, if imposed on motion and warranted for effective deterrence, an order

directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

    (A) against a represented party for violating Rule 11(b)(2); or

    (B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Courts in the Third Circuit follow Ninth Circuit jurisprudence and require strict compliance with Rule 11(c)(2). *In re Jazz Photo,* 312 B.R. 524 (D.N.J. 2004). As such, a Rule 11 motion must actually be served at least 21 days prior to filing. Even where a movant substantially complies with the letter and spirit of Rule 11(c)(2), the motion must be denied unless the actual motion was actually served 21 days prior to filing with the court. *Woods v. Truckee Meadows Water Authority,* 2007 U.S. Dist. LEXIS 58291 (D. Nevada); *Wild Game NG v. Wong's International,* 329 Fed. Appx. 131 (9th Cir. 2009).

Here, American General contends that it complied with Rule 11(c)(2) by serving its "memorandum, along with all associated documents, pleadings, and exhibits, on defendants on March 23, 2011." Memorandum in Support at p. 11. In reality, American General merely sent to defendants' counsel a draft Rule 11 memorandum and associated documents. Ex. O to Eilender Declaration. However, Rule 11(c)(2) requires actual service of the Rule 11 motion. Indeed, the certificate of service ultimately filed by American General sets forth April 21, 2011 as the date of actual service. Furthermore, the memorandum served and filed on April 21, 2011 admits that parts of such memorandum and certain exhibits were not served on March 23, 2011. *Id.*

As such, the very papers submitted by American General in purported support of its Rule 11 motion demonstrate American General's failure to comply with Rule 11(c)(2). Actual service

of the within Rule 11 motion occurred on April 21, 2011, the same date on which such motion was filed with the Court. Therefore, American General's motion for Rule 11 sanctions should be denied as procedurally defective. *Reath v. Reath*, 2006 Bankr. LEXIS 4477 (D.N.J.).

In addition, American General has failed to present any sort of proof demonstrating its alleged compliance with Rule 11(c)(2). Such failure alone, even absent proof of non-compliance, dooms American General's Rule 11 motion. *Oritz v. Automotive Rentals,* 2010 U.S. Dist. LEXIS 82590 (D.N.J.) ("*Oritz*"). In *Oritz*, this Court was presented with a motion for Rule 11 sanctions. In denying such motion, Judge Hillman clearly stated that "even though…counsel state in their memorandum in support of their Rule 11 motion that they provided…[opposing] counsel with the motion on May 27, 2010 [21 days prior to filing such motion with the Court]…***counsel have not provided any certification to support this statement…While the Court has no reason to question the truthfulness of this statement, without proper documentary proof to support…counsel's compliance with the safe harbor provision [Rule 11(c)(2)], the Court cannot grant [the Rule 11] motion on this basis alone***."

In *Oritz,* the Rule 11 motion was unopposed and the Court had absolutely no reason to doubt compliance with Rule 11(c)(2). Nevertheless, absent a certification attesting to such compliance, the Court would not grant the Rule 11 motion. Here, American General's Rule 11 motion is being vigorously opposed; prior to April 21, 2011 — the date upon which the within Rule 11 motion was both filed and served — American General provided counsel for defendants with nothing more than a draft Rule 11 memorandum and associated documents; American General's filed memorandum admits that parts of such memorandum and certain exhibits were not served prior to the date of filing; the certificate of service ultimately filed by American General sets forth April 21, 2011 as the date of actual service; ***and American General has failed***

*to produce a scintilla of proof in support of its claim that this Rule 11 motion was served on March 23, 2011.*

In light of the Court's holding in *Oritz,* there can be no basis to grant American General's Rule 11 motion.  *Oritz* holds that no Rule 11 motion can be granted absent a certification setting forth compliance with Rule 11(c)(2) — even where such compliance is uncontested.  Here, American General has presented no such certification.  To the contrary and as explained, American General's Rule 11 papers clearly demonstrate that they were served and filed on the same day, April 21, 2011.  As Rule 11(c)(2) requires service of a Rule 11 motion at least 21 days prior to filing, American General clearly violated Rule 11(c)(2).  American General's motion for Rule 11 sanctions is thus so procedurally defective and should be denied.

### F.      <u>No Opportunity Was Given To Correct The Alleged Misstatements</u>

Even if American General had served this motion in strict compliance with Rule 11(c)(2) on March 23, 2011, the motion should still be denied for failure to comply with other provisions of Rule 11(c)(2).  Specifically, the Rule also provides that the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service".  So as to allow for proper correction of the challenged pleading, a movant must provide notice of the precise basis for the contemplated Rule 11 motion. *Simmerman,* 27 F.3d at 64.

Upon receiving American General's informal notice of a potential Rule 11 motion, defendants' counsel proposed filing an amended Sontag declaration explaining that Jessica Wilson signed the response to Kirsh's reconsideration motion and not the reply in support of summary judgment, which was signed by David McDowell.  Ex. P to Eilender Declaration. American General's attorneys responded that so long as ***any*** allegations of unethical conduct are

made against American General and its attorneys, the Rule 11 motion would be filed.  American General's attorneys also demanded that defendants' counsel apprise state regulators, to whom allegations of American General's improper conduct were made, that such allegations were mistaken.  Ex. Q to Eilender Declaration.  Absent compliance with such demand, American General's attorneys maintained that the proposed amended declaration would be insufficient.

American General's motion should thus be denied for failure to comply with Rule 11(c)(2).  First, defendants' counsel offered to amend and clarify the Sontag declaration so as to address American General's asserted Rule 11 basis.  As such, Rule 11(c)(2) prohibited the filing of this motion.  Second, American General also set forth that so long as ***any*** allegations of unethical conduct are made against American General and its attorneys, the Rule 11 motion would be filed.  American General thus failed to provide notice of the basis for its Rule 11 motion, rendering correction of the attacked pleading impossible.  Such conduct further violates Rule 11(c)(2) and the filing of this motion was thus prohibited. *Simmerman,* 27 F.3d at 64.

Third, American General demanded that defendants' counsel apprise state regulators, to whom allegations of American General's improper conduct were made, that such allegations were mistaken.  Absent compliance with such demand, American General's attorneys maintained that the proposed amended declaration would be insufficient.  As Rule 11 applies to pleadings in the District Courts and has nothing to do with correspondence to state regulators, such demand was improper and provided no basis for continuing with this Rule 11 motion.  American General's filing of its Rule 11 motion was thus improper.

Additionally, counsel for defendants never made any allegations concerning American General to any regulators.  Any such allegations were made by Mr. David Jaroslawicz, a New York attorney to whom defendants' counsel is "of counsel".  As such, even if Rule 11 applied to

19

regulator correspondence (and it does not), Mr. Jaroslawicz's correspondence would not justify American General's Rule 11 motion in this Court.

Therefore, American General's Rule 11 motion should be denied for failure to comply with Rule 11(c)(2). Despite being prohibited from filing such motion, American General disregarded such prohibition and proceeded with filing its Rule 11 motion. Such conduct may itself be sanctionable pursuant to Rule 11.

Indeed, American General's statements concerning its intention to file this motion so long as *any* allegations of unethical conduct are made against American General and its attorneys — whether in pleadings or in regulator correspondence — demonstrate that this motion was made for the improper purpose of avoiding judicial and regulatory scrutiny of American General's and its attorneys' conduct. The courts have previously spoken to such improper use of Rule 11. "The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct." *Gaiardo,* 835 F.2d at 484-485; *P.J. Noyes v. Bio-Serv,* 1988 U.S. Dist. LEXIS 9240 (D.N.J.); *Express America v. TAMKO Asphalt Products,* 132 B.R. 542 (W.D. Pa. 1991).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny American General's Rule 11 motion in its entirety. As set forth in the declarations of two ethics experts — *See* Herring and Moss Declarations, Ex. L & M to Eilender Declaration — American General's counsel's conduct is wholly inappropriate. In addition, defendants and their counsel invite an evidentiary hearing concerning Jessica Wilson's conduct in misleading the Texas court in *Kirsh. Id.* Considering

Jessica Wilson's total denial of wrongful conduct, she and David McDowell should have no objection to being cross-examined regarding their conduct in connection with the *Kirsh* case. Finally, American General and its attorneys should be ordered to pay the costs and attorneys' fees incurred to oppose this baseless motion for Rule 11 sanctions.

Dated: New York, New York
     May 23, 2011

Respectfully submitted,

ELIZABETH EILENDER, ESQ.
Attorneys for Defendants
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2174

By:    s/Elizabeth Eilender_____
        **Elizabeth Eilender**

21